IN THE

UNITED STATES DISTRICT COURT

MIDDLE DISTRICT OF FLORIDA

| | |
|---|---|
| GREGORY KAZON FIELDS,<br>MARION CORRECTIONAL INSTITUTION,<br>DOC# J56817,<br><br>      Petitioner,<br>v.<br><br>SECRETARY, DEPARTMENT OF<br>CORRECTIONS, STATE OF FLORIDA,<br><br>      Respondent. | Case No. |

**PETITION UNDER 28 U.S.C. § 2254 BY A PERSON IN STATE CUSTODY PURSUANT TO A STATE COURT JUDGMENT**

1.     Name and location of court which entered the judgment of conviction under attack: <u>Florida Fourth Judicial Circuit Court, Duval County, Florida</u>

2.     Date of judgment of conviction: <u>March 11, 2016</u>

3.     Length of sentence: <u>Fifteen years' imprisonment</u>

4.     Nature of offense involved (all counts): <u>Lewd or lascivious molestation</u>

5.     What was your plea? <u>Not guilty</u>

6.     Kind of trial: <u>Jury</u>

7.     Did you testify at the trial? <u>No</u>

8.     Did you appeal from the judgment of conviction?

     Yes (✔)        No (__)

9.     If you did appeal, answer the following:

     (a)     Name of court: <u>Florida First District Court of Appeal</u>

(b)      Result: <u>Conviction and sentence affirmed. *See Fields v. State*, 227 So. 3d 568 (Fla. 1st DCA 2017)</u>

(c)      Date of result: <u>June 28, 2017</u>

10.      Other than a direct appeal from the judgment of conviction and sentence, have you previously filed any petitions, applications, or motions with respect to this judgment in any court, state or federal?

         Yes (✓)[1]          No (_)

11.      If your answer to 10 was "yes," give the following information:

(a)      (1)      Name of court: <u>Florida Fourth Judicial Circuit Court, Duval County, Florida</u>

         (2)      Nature of proceeding <u>Florida Rule of Criminal Procedure 3.850 motion</u>

         (3)      Grounds raised: <u>Ineffective assistance of counsel</u>

         (4)      Did you receive an evidentiary hearing on your petition, application or motion? <u>No</u>

         (5)      Result: <u>Motion denied</u>

         (6)      Date of result: <u>March 6, 2019</u>

         (7)      Did you appeal the result? <u>Yes</u>

             i.      Date of result: <u>March 10, 2020 (mandate issued May 7, 2020)</u>

             ii.      Court: <u>Florida First District Court of Appeal</u>

             iii.      Result: <u>Denial of the motion affirmed</u>

(b)      Did you appeal to the highest state court having jurisdiction the result of action taken on any petition, application or motion?

         (1)      First petition, etc. <u>Yes</u>

12.      State *concisely* every ground on which you claim that you are being held unlawfully. Summarize *briefly* the *facts* supporting each ground. If necessary, you may attach pages stating additional grounds and *facts* supporting same.

---

[1] Petitioner Fields has not previously challenged his convictions in federal court.

## A. STATEMENT OF THE CASE AND STATEMENT OF THE FACTS

Gregory Kazon Fields was the Defendant in the state court proceedings in the State of Florida (Florida Fourth Judicial Circuit/Duval County, case number 2014-CF-1078). Mr. Fields will be referred to as "Petitioner Fields" in this pleading. The prosecution/State of Florida will be referred to as "the State."

In 2016, Petitioner Fields was convicted – following a jury trial – of one count of lewd or lascivious battery. The state trial court sentenced Petitioner Fields to fifteen years' imprisonment. Petitioner Fields appealed the judgment and the Florida First District Court of Appeal affirmed the conviction and sentence. *See Fields v. State*, 227 So. 3d 568 (Fla. 1st DCA 2017).

Petitioner Fields subsequently filed a motion for postconviction relief pursuant to Florida Rule of Criminal Procedure 3.850. (R-1).[2] On February 14, 2019, the State filed a response to Petitioner Fields' rule 3.850 motion. (R-36). On March 6, 2019, the state postconviction court summarily denied (i.e., without holding an evidentiary hearing) Petitioner Fields' rule 3.850 motion. (R-81). On appeal, the Florida First District Court of Appeal *per curiam* affirmed[3] the denial of Petitioner Fields' rule 3.850 motion.

---

[2] References to the state court postconviction record on appeal will be made by the designation "R" followed by the appropriate page number. References to the trial transcripts will be made by the designation "T" followed by the appropriate page number.

[3] The state appellate court did not issue a written opinion.

## B.  STANDARD OF REVIEW

Petitioner Fields' request for federal habeas corpus relief is governed by 28 U.S.C. § 2254, as amended by the Anti-Terrorism and Effective Death Penalty Act, Pub. L. No. 104-132, 110 Stat. 1214 (1996) (hereafter "AEDPA").  Given that the Florida appellate courts affirmed the conviction and the state postconviction court's decision without written explanation, this Court's review must "look through" the appellate court's decisions to the reasoning employed by the state trial court and state postconviction court. *See Wilson v. Sellers*, – U.S. –, –, 138 S. Ct. 1188, 1192 (2018) (holding that a federal habeas court reviewing an unexplained state court decision on the merits should "look through" that decision to the last related state court decision that provides a relevant rationale and presume that the unexplained decision adopted the same reasoning).

Under the AEDPA, habeas relief may not be granted with respect to a claim adjudicated on the merits in state court unless the adjudication of the claim

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d).

In *Williams v. Taylor*, 529 U.S. 362 (2000), the Supreme Court clarified the nature of habeas review as set out in § 2254(d)(1).  Writing for a majority of the Court, Justice O'Connor explained:

> Under the "contrary to" clause, a federal court may grant the writ if the state court arrives at a conclusion opposite to that reached by this Court on a question of law or if the state court decides a case differently than this Court has on a set of materially indistinguishable facts.  Under the "unreasonable application" clause, a federal habeas court may grant the writ if the state court identifies the correct governing legal principle from this Court's decisions but unreasonably applies that principle to the facts of the prisoner's case.

*Williams*, 529 U.S. at 412-13.

As to findings of fact under 28 U.S.C. § 2254(d)(2), federal courts determine whether the state court's finding was based on "an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." A state court's determination of the facts shall be "presumed to be correct," and the habeas petitioner "shall have the burden of rebutting the presumption of correctness by clear and convincing evidence." 28 U.S.C. § 2254(e)(1). *See Hauser ex rel. Crawford v. Moore*, 223 F.3d 1316, 1323 (11th Cir. 2000). However, the statutory presumption of correctness applies only to findings of fact made by the state court, not mixed determinations of law and fact. *See Parker v. Head*, 244 F.3d 831, 836 (11th Cir. 2001); *McBride v. Sharpe*, 25 F.3d 962, 971 (11th Cir. 1994).

In *Miller-El v. Cockrell*, 537 U.S. 322, 341-42 (2003), the Supreme Court stated:

> AEDPA does not require petitioner to prove that a decision is objectively unreasonable by clear and convincing evidence. The clear and convincing evidence standard is found in § 2254(e)(1), but that subsection pertains only to state-court determinations of factual issues, rather than decisions. Subsection (d)(2) contains the unreasonable requirement and applies to the granting of habeas relief . . . .

In other words, the "reasonableness" standard does not apply to determinations of factual issues. Petitioner Fields is not required to prove that the state court's factual findings were unreasonable, only that they were rebutted by clear and convincing evidence. "A federal court can disagree with a state court's credibility determination and, when guided by AEDPA, conclude the decision was unreasonable or that the factual premise was incorrect by clear and convincing evidence." *Id*. at 340.

In Petitioner Fields' case, the state courts' rulings resulted in an unreasonable application of Petitioner Fields' constitutional rights and clearly established federal law. Moreover, the state courts' rulings and orders were based on unreasonable determinations of the facts in light of the evidence presented in the state court proceedings.

## C. ARGUMENT AND CITATIONS TO AUTHORITY

**Ground 1.     Defense counsel rendered ineffective assistance of counsel by failing  to review discovery documents with Petitioner Fields prior to trial and failing to question the alleged victim about her erroneous description of his penis.**

In his state postconviction motion, Petitioner Fields alleged that defense counsel failed to

review discovery documents with him prior to trial and failed to question the alleged victim about

her erroneous description of his penis.  Specifically, in his state postconviction motion, Petitioner

Fields alleged the following:

> The State Attorney's Office, under its discovery obligations, provided to defense counsel a police report, titled "Jacksonville Sheriff's Office Supplement Incident Report." (Attachment "A").  This report includes the year 2014, incident number 77649, and is listed as Sup. #1.  *Id.*  In the narrative portion of the report (page 2 of 5), the alleged victim described the suspect's penis as "circumcised without any hair."  Mr. Fields never saw this report and states defense counsel never reviewed this report with him.  Mr. Fields was not aware that the alleged victim provided this description of his genital.  Mr. Fields was not aware of this report and its narrative until after he was sentenced.  His appellate attorney informed him about the report and that it contained a description of his genitalia.
>
> Mr. Fields' penis is not circumcised and defense counsel failed to address this important fact during the trial.  Defense counsel was ineffective when he failed to cross-examine the alleged victim []⁴ regarding her description of her perpetrator's penis, making it known to the jury that Mr. Fields is not circumcised, and that the alleged victim, [] failed to make a positive identification of a critical piece of evidence.  During trial, [] did not identify Mr. Fields in court.  Had [] been cross-examined on this matter, the jurors would have reasonably concluded that Mr. Fields was not the actual suspect in this case and would have found him not guilty.  Had defense counsel deposed [], and/or reviewed the State's discovery with Defendant, defense counsel would have discovered this very crucial discrepancy.  Under *Strickland*, defense counsel was ineffective because his performance at trial was deficient at failing to review the police report with the Defendant and ineffectively cross-examining the key witness, thereby depriving Defendant of a fair trial as

---

⁴ The alleged victim's name was redacted from the state court postconviction record. In this petition, undersigned counsel is using "[]" in the places where the alleged victim's name appeared.

guaranteed in the United States Constitution and the Florida Constitution. *Strickland* at 669 (1984).

(R-12-13) (footnote added).

In its order denying this claim, the state postconviction court simply adopted the State's response. (R-81-83). In its response, the State asserted that during a pretrial hearing, the following occurred:

> THE COURT: Have all the discovery, Mr. Barrar, including names of witnesses, copies of tapes, witness statements, and all of the discovery provided by the State of Florida been provided to and reviewed with your client, Mr. Fields?

> MR. BARRAR [defense counsel]: I have gone over everything with him. I got an amended discovery last night around 9:20. But it is somebody who has been previously disclosed. I had a report from him. It is the fingerprint gentleman, and I believe he was [labeled] a Category A witness. If [I'm] wrong, I don't specifically recall.
> There is no prejudice.

> MS. PADGETT [the prosecutor]: That is correct, your Honor. He was already listed as a Category A witness according to the reports and previously has been listed.
> I just listed him specifically as an expert witness and for that purpose and as a witness under section J.

> MR. BARRAR: I had all this stuff. I was well prepared in anticipating the State's properly calling him. He was previously listed. I showed the reports to Mr. Fields. It is a fingerprint report.

> THE COURT: Very well. Mr. Fields, you did see that information either last night or today?

> THE DEFENDANT: Yes, ma'am.

> MR. BARRAR: And judge, he had seen it before.

> THE COURT: All right. So you have seen it?

> THE DEFENDANT: Yes, ma'am.

> THE COURT: Very well. So Mr. Barrar, would it be fair to say that your investigation of this matter is now complete?

MR. BARRAR: Oh, yes, Judge. We are ready to go. As a matter of fact, if we did not go today, we would have filed a [demand] for speedy trial. And I had already discussed that with Mr. Fields.

THE COURT: And these are I normally ask at final pre-trial I wanted to handle today because we are all in person.

MR. BARRAR: I understand.

THE COURT: Is there anything else you want your attorney to do to ensure you are fully prepared for jury selection later on today?

THE DEFENDANT: No.

(R-40) (citing R-53-55). The State argued that this excerpt from the pretrial conference refutes Petitioner Fields' claim. Contrary to the State's argument, the colloquy quoted above does not refute Petitioner Fields' claim that defense counsel was ineffective for failing to disclose to him that the alleged victim had told law enforcement officials – as documented in the incident report – that Petitioner Fields was "circumcised without any hair."

In support of his argument, Petitioner Fields relies on *Fernandez v. State*, 135 So. 3d 446 (Fla. 2d DCA 2014). In *Fernandez*, the defendant entered a guilty plea to a robbery charge. The defendant later filed a postconviction motion claiming that defense counsel was ineffective for failing to investigate the "afterthought" defense, but the postconviction court summarily denied this claim by concluding that the plea colloquy refuted this claim. On appeal, the appellate court reversed and explained that a defendant's answers to "general" questions during a colloquy do not conclusively refute a subsequent postconviction claim:

> During the colloquy, Fernandez stated that he was satisfied with the services of his attorney and that he did not need counsel to file any motions or talk to any witnesses. Based solely on this exchange, the postconviction court found that Fernandez was not entitled to withdraw his plea. This was error. *Fernandez's answers to those general questions did not conclusively refute his later claim that he was unaware of the*

> possibility of asserting the afterthought defense when he pleaded guilty. *See Hayes v. State*, 120 So. 3d 640, 641 (Fla. 2d DCA 2013) (holding that "acknowledgments and answers of [a] general nature did not conclusively refute [the defendant's] allegation of ineffective assistance based on his counsel's failure to pursue a specific defense"). *The trial court neither asked specifically whether Fernandez's attorney had discussed the afterthought defense with him nor asked generally whether counsel had discussed possible defenses with him.*
>
> Accordingly, we reverse the postconviction court's summary denial of grounds one and two of Fernandez's motion for postconviction relief.

*Fernandez*, 135 So. 3d at 448 (emphasis added) (alterations in the original). As in *Fernandez*, the colloquy quoted above does not refute Petitioner Fields' claim that defense counsel failed to inform him that the alleged victim had previously claimed that he was circumcised. The state trial court at no time during the colloquy specifically asked Petitioner Fields whether his attorney had discussed "Jacksonville Sheriff's Office Supplement Incident Report 2014-77649" with him or the fact that the alleged victim had previously claimed that he was circumcised. Moreover, the state trial court did not specifically ask defense counsel whether he had discussed the "Jacksonville Sheriff's Office Supplement Incident Report 2014-77649" with Petitioner Fields or disclosed to Petitioner Fields that the alleged victim had previously claimed that he was circumcised. *See also Hayes v. State*, 120 So. 3d 640, 641 (Fla. 2d DCA 2013) ("The transcript of the plea colloquy reflects that when asked by the trial court if he was satisfied with his attorney's services, Hayes answered 'yes.' Hayes also answered 'no' when asked if there were any other witnesses he wanted counsel to contact or any discovery or investigation he wanted counsel to conduct prior to entering the plea. But acknowledgments and answers of that general nature did not conclusively refute Hayes' allegation of ineffective assistance based on his counsel's failure to pursue a specific defense. *See Zanchez v. State*, 84 So. 3d 466, 468 (Fla. 2d DCA 2012) (holding that 'a generalized discussion of the motions

or defenses that were being waived' did not preclude a claim of ineffective assistance of counsel for failing to move to suppress evidence).").

A claim that defense counsel failed to question a witness about a distinguishing body feature is a facially sufficient postconviction claim. *See Aristil v. State*, 191 So. 3d 989 (Fla. 2d DCA 2019) (holding that the defendant's postconviction claim that defense counsel was ineffective for failing to cross-examine the detective on whether he had seen a tattoo on the suspect's hand and for failing to have the defendant show the jury his hands when he was on the witness stand warranted an evidentiary hearing); *Pierce v. State*, 137 So. 3d 578 (Fla. 2d DCA 2014) (holding that defendant's postconviction claim that defense counsel was ineffective for failure to impeach the alleged victim's trial testimony that the defendant had scars on his shoulder and abdomen, which were visible only when he removed his shirt, with the alleged victim's statements during an interview with the detective in which she initially stated that she did not see any scars and then later stated that she was not sure if he had scar on his chest because it had been such long time ago, was not conclusively refuted by record as required to survive summary denial). In his state postconviction motion, Petitioner Fields specifically alleged his "penis is not circumcised" (R-13) – and he re-alleges this fact in this petition.

In its response to Petitioner Fields' state postconviction motion, the State also argued that Petitioner Fields was not prejudiced by defense counsel's failure to question the alleged victim about her claim that Petitioner Fields was circumcised because the State asserted that defense counsel cross-examined the alleged victim "on many other matters" – such as her being a "runaway" and being treated by a psychiatrist. (R-41). In *Pierce*, the appellate court rejected a similar argument:

> The postconviction court also noted that Mr. Pierce's proposed impeachment [about his scars] would have been largely cumulative. Mr. Pierce's counsel elicited

on cross-examination that the victim was not actually fearful of bringing these allegations. When counsel asserted that the victim would have no need to fear Mr. Pierce while she was in Puerto Rico, she conceded that she did not report the incident because she wanted to put it behind her. Counsel also emphasized that the victim's calm demeanor while speaking with Mr. Pierce during a controlled call showed the victim's lack of fear. But this impeachment of the victim was introduced to prove that the victim's testimony regarding her fear in bringing these allegations was false. *Conversely, the victim's prior inconsistent statements were admissible to attack the credibility of her trial testimony. See* § 90.608(1)[, Fla. Stat.]. Therefore, these prior inconsistent statements would have been admissible for the purpose of attacking her credibility since they were not cumulative to other facts that Mr. Pierce's trial counsel elicited on cross-examination. *See Nelson v. State*, 126 So. 3d 1195, 1199 (Fla. 4th DCA 2012) (reversing summary denial of claim that counsel was ineffective for failing to impeach the victim with his prior statements, which "would have significantly impacted the credibility of the victim's version of events"); *Bentley v. State*, 867 So. 2d 515, 516 (Fla. 1st DCA 2004) (finding that the failure to impeach the State's key witness with a prior inconsistent statement constituted deficient performance despite counsel's impeachment of the witness with his prior convictions and motives).

(Emphasis added) (one citation omitted). As in *Pierce*, in the instant case, questioning the alleged victim about whether Petitioner Fields is circumcised would have significantly impacted her credibility and thus would not have been cumulative to the other facts defense counsel elicited during cross-examination.

The Sixth Amendment right to counsel implicitly includes the right to the effective assistance of counsel. *See McMann v. Richardson,* 397 U.S. 759, 771 (1970); *Chatom v. White,* 858 F.2d 1479, 1484 (11th Cir. 1988). "The test to be applied by the trial court when evaluating an ineffectiveness claim is two-pronged: The defendant must show both that trial counsel's performance was deficient and that the defendant was prejudiced by the deficiency." *Bruno v. State*, 807 So. 2d 55, 61 (Fla. 2002) (citing *Strickland v. Washington*, 466 U.S. 668, 687 (1984)).

Based on the record in this case, Petitioner Fields satisfies both prongs of the *Strickland* standard. Defense counsel was ineffective for failing to review discovery documents with Petitioner Fields prior to trial and failing to question the alleged victim about her erroneous description of his

penis. Absent counsel's ineffectiveness in the instant case, the result of the sentencing hearing would have been different. The state courts' rulings in this case were contrary to and an unreasonable application of *Strickland* and Petitioner Fields' Sixth Amendment right to the effective assistance of counsel. Additionally, the state courts' rulings were based on an unreasonable determination of the facts in light of the evidence contained in the state court record.

Petitioner Fields requests a hearing on this claim. In the context of a federal habeas petition filed pursuant to 28 U.S.C. § 2254(d)(2), federal courts determine whether the state court's finding was based on "an unreasonable determination of the facts in light of the evidence presented in the state court proceeding." A state court's determination of the facts shall be "presumed to be correct" and the habeas petitioner "shall have the burden of rebutting the presumption of correctness by clear and convincing evidence." 28 U.S.C. § 2254(e)(1). *See Hauser ex rel. Crawford v. Moore*, 223 F.3d 1316, 1323, (11th Cir. 2000). However, the statutory presumption of correctness applies only to findings of fact made by the state court, not mixed determinations of law and fact. *See Parker v. Head*, 244 F.3d 831, 836 (11th Cir. 2001); *McBride v. Sharpe*, 25 F.3d 962, 971 (11th Cir. 1994). More importantly, the presumption of correctness is only applicable for state court findings made after a "full and fair" hearing – a hearing on the merits with both parties present and the findings reduced to writing. *See Alston v. Redman*, 34 F.3d 1237 (3d Cir. 1994).

Petitioner Fields has not received a full, fair, or adequate hearing to resolve his claim– in fact, he has not been afforded *any* hearing. Petitioner Fields is therefore entitled to an evidentiary hearing on his claim.[5]

---

[5] 28 U.S.C. § 2254 states that "a determination of a factual issue made by a State court shall be presumed to be correct" and that "the applicant shall have the burden of rebutting the presumption of correctness by clear and convincing evidence." However, in *Miller v. Champion*,

28 U.S.C. § 2254 states the following regarding the power of federal courts to order evidentiary hearings in habeas cases:

> If the applicant has failed to develop the factual basis of a claim in state court proceedings, the court shall not hold an evidentiary hearing on the claim unless the applicant shows that –
> (A) the claim relies on
> (i) a new rule of constitutional law, made retroactive to cases on collateral review by the Supreme Court, that was previously unavailable; or
> (ii) a factual predicate that could not have been previously discovered through the exercise of due diligence; and
> (B) the facts underlying the claim would be sufficient to establish by clear and convincing evidence that but for constitutional error, no reasonable factfinder would have found the applicant guilty of the underlying offense.

28 U.S.C. 2254(e)(2).

In *Breedlove v. Moore*, 279 F.3d 952 (11th Cir. 2002), the Eleventh Circuit discussed the standard for obtaining an evidentiary hearing:

> This provision places a fairly stringent limitation on the power of the federal courts to order evidentiary hearings in habeas cases. Indeed, if a petitioner fails to develop an adequate factual record in the state courts, an evidentiary hearing could only be ordered if one of the two narrow exceptions to the general rule prohibiting such hearings applied.
> However, the question of what exactly constitutes a "failure to develop" the factual basis for a claim in state court is one on which we have not spoken. The Supreme Court, however, has addressed this question in a recent opinion, and stated that a petitioner cannot be said to have "failed to develop" relevant facts if he diligently sought, but was denied, the opportunity to present evidence at each stage of his state proceedings. *Williams v. Taylor*, 529 U.S. 420, 437 (2000) (*Williams I*). The Court noted that § 2254(e) requires habeas petitioners to be diligent in presenting the factual bases of their federal claims to state courts, and that a failure to do so will result in the denial of an evidentiary hearing in federal court (unless the statute's

---

161 F.3d 1249, 1254 (10th Cir. 1998), the Tenth Circuit stated that "this presumption of correctness does not apply. . . if the habeas petitioner did not receive a *full, fair and adequate* hearing in the state court proceeding on the matter sought to be raised in the habeas petition." (Emphasis added.) *See also Valdez v. Cockrell*, 288 F.3d 702, 703 (5th Cir. 2002) (Dennis, J., dissenting) (stating that the *Miller* court observed, in a post-AEDPA case, that the denial of a full and fair hearing in state court still renders inoperative the statutory presumption of correctness).

other stringent requirements are met).  *Id.* However, the Court also pointed out that:

> comity is not served by saying a prisoner "has failed to develop the factual basis of a claim" where he was unable to develop his claim in state court despite diligent effort.  In that circumstance, an evidentiary hearing is not barred by 2254(e)(2).

*Id.*

In the instant case, the record clearly indicates that Breedlove sought an evidentiary hearing on his Brady claim at every stage of his state proceedings.  The state courts denied him the opportunity to present evidence related to his Brady claim; therefore, he was prevented from developing a factual basis for his claim in state court.  In light of this fact, § 2254(3)(2) does not preclude an evidentiary hearing in Breedlove's case.

*Breedlove*, 279 F.3d at 959-60.  *See also Miller v. Champion*, 161 F.3d 1249, 1253 (10th Cir. 1998)

("We now join every other circuit that has confronted this question and hold that where, as here, a

habeas petitioner has diligently sought to develop the factual basis underlying his habeas petition,

but a state court has prevented him from doing so, § 2254(e)(2) does not apply.").

As in *Breedlove*, the state court denied Petitioner Fields the opportunity to present evidence

related to his claim and therefore Petitioner Fields was prevented from developing a factual basis for

his claim in state court.[6]  Hence, Petitioner Fields is not precluded from an evidentiary hearing in this

proceeding and the Court should grant him one.

---

[6] Undersigned counsel note that the judge who presided over Petitioner Fields' state postconviction motion was *not* the same judge who presided over the *Williams* rule hearing and imposed the sentence (i.e., the state postconviction court ruled on a cold record and no thus deference should be given to the judge's factual "findings" regarding the prosecutor's argument being "a fair comment on the record").  Without the opportunity to make any credibility determinations, the state postconviction court's analysis was "based on an unreasonable determination of the facts in light of the evidence presented in the state court proceeding," and therefore "this Court is not bound to defer to unreasonably-found facts or to the legal conclusions that flow from them." *Jones v. Walker*, 540 F.3d 1277, 1288 n.5 (11th Cir. 2008) (*en banc*).

**Ground 2.    Defense counsel rendered ineffective assistance of counsel by failing to present alibi witnesses at trial**.

In his state postconviction motion, Petitioner Fields alleged that defense counsel failed to present alibi witnesses at trial.  Specifically, in his state postconviction motion, Petitioner Fields alleged the following:

> On September 17, 2014, defense counsel filed a "Notice of Alibi and Defense Witness List" listing six (6) defense witnesses and stating that during a portion of the time periods contained in the State's Response to Defendant's Motion for Statement of Particulars, the Defendant was at the First Coast Medical Center in Jacksonville, Florida.  (ROA, Vol. I, pg. 44).  The six (6) listed defense witnesses are: 1.) Custodian of Records First Coast Medical Center, 2.) Larry Shufford, 3.) Ena Brown, 4.) Dr. Nathan Perry, 5.) Carespot, and 6.) Custodian of Records Carespot.  *Id.*  Mr. Fields provided defense counsel with this important information and defense counsel neither interviewed nor called any alibi witnesses during the defense case-in-chief.  Mr. Fields invoked his Fifth Amendment right against self-incrimination, and therefore, it was pertinent that the alibi witnesses testify at trial to provide the time frame of what Mr. Fields was doing during the alleged incident.
>
> In cases involving claims of ineffective assistance of counsel based on counsel's alleged failure to investigate and to interview witnesses, a facially sufficient motion must include the following allegations: (1) the identity of the prospective witnesses; (2) the substance of the witnesses' testimony; and (3) an explanation as to how the omission of this evidence prejudiced the outcome of the trial.  *See Highsmith v. State*, 617 So. 2d 825 (Fla. 1st DCA 1993); *Sorgman v. State*, 549 So. 2d 686 (Fla. 1st DCA 1989); *Robinson v. State*, 516 So. 2d 20 (Fla. 1st DCA 1987); *Swain v. State*, 502 So. 2d 494 (Fla. 1st DCA 1987); *Majewski v. State*, 487 So. 2d 32, 33 (Fla. 1st DCA 1986).
>
> Mr. Fields provided defense counsel with the names of the witnesses well in advance of the trial date.  Defense counsel was also in possession of medical records that proved Mr. Fields was at First Coast Medical Center on February 3, 2014.  The morning of the arrest, Mr. Fields had been at the doctor's office.  He arrived at the doctor's office about 9 a.m., and was there for approximately  forty-five minutes to one hour.  The alibi witness would testify about this time frame.  The incident is alleged to have occurred between 10 a.m. and 10:10 a.m., based on the Arrest and Booking Report (ROA, Vol. 1, p. 1).  The prosecutor filed a Statement of Particulars and an Amended Statement of Particulars in this case.  (*Id.* at 26, 27).  Initially, the approximate time of the incident on the Statement of Particulars was listed as 10 a.m., and then, the approximate time on the Amended Statement of Particulars was changed to 8:30 a.m. to 10:30 a.m. (*Id.*).  This proves the inconsistencies in the State's case and that the prosecution was having an issue with showing at what time

the alleged incident took place. Had defense counsel presented the defense witnesses at trial, the jury would have heard from the credible witnesses that the sequence of events provided by [] during the trial could not have occurred. Had defense counsel called the defense witnesses to testify, the jury would have made a different determination regarding the alleged victim's credibility and would have found Mr. Fields not guilty of the crime he was charged with. Confidence in the outcome of Mr. Fields' case is undermined, prejudice has been shown, and a new trial should be granted.

(R-13-15).

In its order denying this claim, the state postconviction court simply adopted the State's response. (R-81-83). In its response, the State argued that defense counsel made a "strategic decision" to refrain from presenting alibi witnesses at trial. (R-42-43).[7] However, "[a postconviction] court cannot deny a motion for post-conviction relief by finding that defense counsel's decision was tactical or trial strategy *without first holding an evidentiary hearing*." *Button v. State*, 941 So. 2d 531, 533 (Fla. 4th DCA 2006) (emphasis added) (citation omitted). As explained by the Sixth Circuit Court of Appeals in *Barnes v. Elo*, 231 F.3d 1025, 1029 (6th Cir. 2000), without conducting an evidentiary hearing, it is impossible to determine whether counsel's actions were strategic:

> Barnes argues that he was denied effective assistance of counsel by his trial attorney's failure to investigate or call a medical witness to establish Barnes's inability to run in the manner that the complainant testified her assailant had run. It is unclear from the record whether or to what extent trial counsel investigated Barnes's medical condition, and why he failed to contact Dr. Waring. *Absent an evidentiary hearing and clear finding of fact, it is impossible to determine whether trial counsel's failure to investigate and call Dr. Waring was sound trial strategy*, *see Strickland*, 466 U.S. at 690-691 ("Strategic choices made after thorough investigation of law and facts relevant to plausible options are virtually unchallengeable; and strategic choices made after less than complete investigation

---

[7] In its response, the State cited Officer Gray's trial testimony (R-42), but as explained in Petitioner Fields' *pro se* motion for rehearing, Officer Gray's testimony establishes only the time of arrest – not the time of the alleged offense. (R-151-154).

are reasonable precisely to the extent that reasonable professional judgments support the limitations on investigation."), or was constitutionally deficient performance. *See id.* at 691 ("Counsel has a duty to make reasonable investigations or to make a reasonable decision that makes particular investigations unnecessary."). Given Dr. Waring's ability to testify that Barnes was incapable of running as the complainant described, he certainly would have been an essential witness. *Without an evidentiary hearing, we cannot meaningfully review whether the Michigan state courts' determination that Barnes's trial counsel was not ineffective for failing to call a medical witness was an unreasonable application of Strickland.*

(Emphasis added).

Thus, for the reasons set forth above, defense counsel rendered ineffective assistance of counsel for failing to present alibi witnesses at trial. The state courts' rulings in this case were contrary to and an unreasonable application of *Strickland* and Petitioner Fields' Sixth Amendment right to the effective assistance of counsel. Additionally, the state courts' rulings were based on an unreasonable determination of the facts in light of the evidence contained in the state court record.

Furthermore, the state court denied this claim without affording Petitioner Fields an evidentiary hearing. For all of the reasons set forth in Ground 1 regarding the failure of a state court to conduct a "full and fair" hearing, Petitioner Fields submits that he is entitled to a hearing on this issue, as he has not previously been provided a "full and fair" hearing.

**Ground 3.      Defense counsel rendered ineffective assistance of counsel by failing to depose witnesses prior to trial**.

In his state postconviction motion, Petitioner Fields alleged that defense counsel failed to depose witnesses prior to trial – including the alleged victim (i.e., the State's key witness). Specifically, in his state postconviction motion, Petitioner Fields alleged the following:

> Defense counsel's ineffectiveness was a direct result of defense counsel's failure to investigate and failure to depose witnesses. Ten (10) Category A witnesses were listed by the Assistant State Attorney in its discovery responses. Defense

counsel neither scheduled nor took a deposition of Category A witnesses. None of the ten (10) Category A witnesses were interviewed by defense counsel's office.

It was evident in reviewing the State's discovery, that there were no witnesses to the alleged incident, but for the alleged victim, []. Defense counsel did not schedule the deposition of []. Had defense counsel deposed the alleged victim, he would have been prepared for the testimony that [] provided at trial, and would have been better prepared for cross-examination of this witness.

It has been held that when a failure to depose is alleged as part of an ineffective assistance of counsel claim, the appellant must specifically set forth the harm from the alleged omission, identifying "a specific evidentiary matter to which the failure to depose witnesses would relate." *Brown v. State*, 846 So. 2d 1114, 1124 (Fla. 2003) (citing *Magill v. State*, 457 So. 2d 1367, 1370 (Fla. 1984)). Had defense counsel deposed [] Mr. Barrar would have known about the following: 1) the inability of [] to provide an identification of her accuser; 2) the inability of [] to make an in-court identification; 3) the inability of [] to remember the specifics of what occurred on February 3, 2014; 4) the inability of [] to identify the vehicle [] allegedly was a passenger in on the morning of February 3, 2014; 5) the background of [] as it relates to her educational, mental health and medical status prior to and during the alleged incident; 6) the background of [] as it relates to her educational, mental health and medical status after the alleged incident; and 7) information regarding her involvement in a federal case/investigation concerning a human trafficking case she was involved in. All of this information is important to know in order to formulate a proper defense for Mr. Fields at trial. If Mr. Barrar had the answers to these questions prior to the trial, he could have attacked [] credibility and demonstrated to the jury that Mr. Fields was unjustly accused. The lack of investigation and lack of depositions, prejudiced Mr. Fields and led to the ineffectiveness of the trial attorney.

These omissions by defense counsel are unreasonable and constitute a departure from standard professional norms. It was unknown to defense counsel and the Defendant what the alleged victim remembered and did not remember regarding the incident. It was unknown to defense counsel and the Defendant what the alleged victim's mental state was at the time of trial. Mr. Fields was facing a maximum of 15 years prison if convicted on this very serious charge. Defense counsel had a duty to fully investigate the matter, and this includes deposing the essential witnesses in the case. Had defense counsel deposed the alleged victim, defense counsel could have determined if a defense expert in the field of mental health, psychiatry or psychology was necessary in order to address the testimony that was provided by the alleged victim during trial; such as the alleged victim's difficulty in separating truth from fiction and her lack of memory regarding the date of the incident. Had defense counsel deposed the alleged victim, he would have known that she remembered very little about what occurred on February 3, 2014. The truthfulness and credibility of a testifying witness is for a jury to analyze and determine. This is why the failure to depose [], meets the *Strickland* test from ineffective assistance of counsel. This was a one day trial with a handful of witnesses. The jury spent four (4) hours deliberating

in this instance.  Had defense counsel effectively assisted Mr. Fields at trial by deposing and interviewing key witnesses, there is a reasonable probability the jury would have made a different determination regarding the alleged victim's credibility, and it would have found Mr. Fields not guilty of the crime he was charged with.

(R-10-12).

In its order denying this claim, the state postconviction court simply adopted the State's response.  (R-81-83).  In its response, the State's sole argument was that during a pretrial hearing, Petitioner Fields said "Yes, Judge" when asked if he agreed with defense counsel's decision to refrain from deposing witnesses.  (R-39).  However, Petitioner Fields' short "Yes, Judge" answer during the pretrial hearing does not insulate defense counsel's actions from postconviction review.  As explained by the court in *Downs v. State*, 227 So. 3d 694, 696 (Fla. 5th DCA 2017):

> As an initial matter, "[a] client's acquiescence in trial counsel's conduct does not necessarily insulate the lawyer's performance from judicial review in a postconviction proceeding."  *Evans v. State*, 737 So. 2d 1167, 1168 (Fla. 2d DCA 1999).  Thus, the postconviction court's finding that Downs knew about counsel's trial strategy and "nevertheless retained him for representation" is unavailing.

At the time that Petitioner Fields gave his answer during the pretrial hearing, he did *not* know the advantages and disadvantages of deposing witnesses prior to trial (because defense counsel failed to properly advise Petitioner Fields regarding this matter).  Thus, Petitioner Fields' answer during the pretrial hearing did not represent a knowing and intelligent waiver of his right to depose witnesses and/or a knowing and intelligent waiver of his right to challenge defense counsel's decision to refrain from deposing witnesses in this case.

Thus, for the reasons set forth above, defense counsel was ineffective for failing to depose witnesses prior to trial.  The state courts' rulings in this case were contrary to and an unreasonable application of *Strickland* and Petitioner Fields' Sixth Amendment right to the effective assistance

of counsel. Additionally, the state courts' rulings were based on an unreasonable determination of the facts in light of the evidence contained in the state court record.

Furthermore, the state court denied this claim without affording Petitioner Fields an evidentiary hearing. For all of the reasons set forth in Ground 1 regarding the failure of a state court to conduct a "full and fair" hearing, Petitioner Fields submits that he is entitled to a hearing on this issue, as he has not previously been provided a "full and fair" hearing.

**Ground 4.        Defense counsel rendered ineffective assistance of counsel due to a *Brady* violation**.

In his state postconviction motion, Petitioner Fields alleged that defense counsel was ineffective due to a *Brady*[8] violation. Specifically, in his state postconviction motion, Petitioner Fields alleged the following:

> Defense counsel failed to inquire about a violation of *Brady v. Maryland*, resulting in violations of Mr. Fields' Fifth and Fourteenth Amendment rights under the United States Constitution and his correlating rights under the Florida Constitution. *Brady v. Maryland*, 373 U.S. 83 (1963). During the trial testimony of the alleged victim [] it became apparent that [] was not able to identify Mr. Fields in court as her assailant. [] testified on direct examination that an older, chubby African American male, who is approximately 5'5" tall, approached her on Main Street and asked her if she needed a ride. (*Id*. at 370-371). During direct examination, [] was not asked by the prosecutor if she saw her assailant in the courtroom and could identify him. On January 19, 2016, the same day as jury selection, [] spent the date at the State Attorney's Office. (*Id.* at 390). On redirect examination, [] admitted that she met with Assistant State Attorneys Brooke Padgett and Justin Dixon. (*Id.* at 392).
>
> At the time that the prosecutor concluded her questioning of [] on direct examination, defense counsel should have approached the presiding Judge with the prosecutor and the court reporter at sidebar and inquired as to whether or not [] had stated during the meeting with the prosecutor on June 19, 2016, that she couldn't identify the Defendant as her assailant. Such an issue as the alleged Victim not being able to determine her assailant's identity and not being able to identify the defendant as her assailant is a *Brady* issue that the prosecutor should have disclosed. *Brady v. Maryland*, 373 U.S. 83 (1963). The Court found in *Brady v. Maryland*, that the

---

[8] *Brady v. Maryland*, 373 U.S. 83 (1963).

suppression by the prosecution of evidence favorable to an accused upon request violates due process where the evidence is material either to guilt or to punishment, irrespective of the good faith or bad faith of the prosecution. *Id*. at 87. Defense counsel was ineffective when he failed to inquire into this potential *Brady* issue. Had defense counsel asked the prosecutor if the alleged victim had stated she could not identify the Defendant, that defense counsel could have followed-up with this line of questioning on cross-examination of []. Once answered that she could not identify her assailant, then the jury would have returned a verdict of not guilty, as this would go into weighing the credibility of this witness and to her memory of the events on the date in question. Defense counsel was ineffective in following-up with this *Brady* issue.

To establish a *Brady* violation, a defendant must demonstrate: (1) the State possessed evidence favorable to the accused because it was either exculpatory or impeaching; (2) the State willfully or inadvertently suppressed the evidence; and (3) the defendant was prejudiced." *Mordeni v. State*, 849 So. 2d 161, 169 (Fla. 2004). In this instance, the Assistant State Attorney should have provided the *Brady* material, even if not requested to do so by the defense. Failure to provide this information deprived the Defendant of a fair trial. The State possessed the information that the alleged victim, [] could not identify the Defendant as her accuser which is exculpatory evidence and the State willfully or inadvertently suppressed the evidence. This prejudiced the defense from questioning the alleged victim on the witness stand during trial as to whether or not she could identify the defendant as her assailant. The due process duty of the prosecution under *Brady* to disclose evidence favorable to the Defendant is applicable even though there has been no request by the Defendant, and encompasses impeachment evidence as well as exculpatory evidence. *Strickler v. Greene*, 527 U.S. 263, 280 (1999).

The burden to disclose all duly requested exculpatory information rests with the State, *Hoffman v. State*, 800 So. 2d 174, 179 (Fla. 2001), and defense counsel had no duty to exercise due diligence to review for Brady material until the State makes its existence known. *See Allen v. State*, 854 So. 2d 1255, 1259 (Fla. 2003) (rejecting State's argument that defendant could not establish *Brady* violation based on State's failure to disclose results of hair sample testing where defendant knew of testing and could have learned results through exercise of due diligence).

Under *Brady v. Maryland*, 373 U.S. 83, 87 (1963), the State has a constitutional obligation to disclose exculpatory and impeachment evidence to a defendant if it is material to either guilt or punishment. *See U.S. v. Bagley*, 473 U.S. 667, 676 (1985). Evidence is material if "there is a reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different. A 'reasonable probability' is a probability sufficient to undermine confidence in the outcome." *Bagley*, 473 U.S. at 682; *see also Kyles v. Whitley*, 514 U.S. 419, 434 (1995). As stated by the USSC in *Strickler*:

> "The materiality inquiry is not just a matter of determining whether,
> after discounting the inculpatory evidence in light of the undisclosed

> evidence, the remaining evidence is sufficient to support the jury's
> conclusions. (Citation omitted.) Rather, the question is whether "the
> favorable evidence could reasonably be taken to put the whole case
> in such a different light as to undermine confidence in the verdict."

*Strickler v. Greene*, 119 S. Ct. 1936, 1942 (1995).

> "This non-disclosure also prevented Mr. Field's defense counsel from
> properly cross-examining []- a violation of the Confrontation Clause. *See Olden v.
> Kentucky*, 488 U.S. 227, 231 (1988), citing *Davis v. Alaska*, 415 U.S. 308, 315-16
> (1974) (internal citations omitted); *see also Pointer v. Texas*, 380 U.S. 400, 404
> (1965) (A defendant must be afforded the opportunity to conduct a meaningful cross-
> examination that casts the witness in an accurate light to test and weigh his
> credibility.)

(R-15-18).

In its order denying this claim, the state postconviction court simply adopted the State's response. (R-81-83). In its response, the State asserted that Petitioner Fields was not prejudiced by the *Brady* violation. (R-43-44). Contrary to the State's assertion – and as conceded by the State in its response – "[t]he victim was not asked by either the State or the Defense to identify the Defendant." (R-43). As argued by Petitioner Fields in his state postconviction motion, but for the *Brady* violation, defense counsel would have confirmed with the alleged victim during cross-examination that she could not identify Petitioner Fields – and this testimony likely would have resulted in the jury returning a not guilty verdict.

Thus, for the reasons set forth above, defense counsel was ineffective due to a *Brady* violation. The state courts' rulings in this case were contrary to and an unreasonable application of *Brady*, *Strickland*, and Petitioner Fields' Sixth and Fourteenth Amendment rights. Additionally, the state courts' rulings were based on an unreasonable determination of the facts in light of the evidence contained in the state court record.

Furthermore, the state court denied Petitioner Fields' *Brady* claim without affording Petitioner Fields an evidentiary hearing. For all of the reasons set forth in Ground 1 regarding the failure of a state court to conduct a "full and fair" hearing, Petitioner Fields submits that he is entitled to a hearing on this issue, as he has not previously been provided a "full and fair" hearing.

**Ground 5.     Cumulative error**.

In his state postconviction motion, Petitioner Fields raised a cumulative error claim. (R-18). All of the errors committed in Petitioner Fields' case, considered either individually or together, resulted in Petitioner Fields being denied a fair trial. "Where no single error or omission of counsel, standing alone, significantly impairs the defense, the district court may nonetheless find unfairness and thus, prejudice emanating from the totality of counsel's errors and omissions." *Ewing v. Williams*, 596 F.2d 391, 396 (9th Cir. 1979). *See also Cargle v. Mullin*, 317 F.3d 1196, 1206-07 (10th Cir. 2003).

**Ground 6.     The state trial court erred by denying Petitioner Fields' motions for judgment of acquittal.**

On direct appeal, Petitioner Fields alleged that the state trial court erred by denying his motions for judgment of acquittal. As a result, Petitioner Fields' constitutional due process rights were violated. *See In re Winship*, 397 U.S. 358, 364 (1970) (holding that the Due Process Clause of the Fourteenth Amendment to the United States Constitution "protects the accused against conviction except upon proof beyond a reasonable doubt of every fact necessary to constitute the crime charged").

The State argued at trial that Petitioner Fields offered the alleged victim (Z.S.) a ride, and that Petitioner Fields pulled his vehicle into the back parking lot of an abandoned McDonalds where Z.S.

performed oral sex on Petitioner Fields out-of-sight, behind a wood-line. The State failed to introduce direct evidence of these claims at trial. First, and most importantly, Z.S. did not identify Petitioner Fields. Second, there was no eyewitness testimony claiming to see Z.S. perform oral sex on Petitioner Fields, or performing oral sex at all. Third, no admissible physical evidence linked Petitioner Fields and Z.S. Fourth, the State failed to introduce any evidence that the vehicle at the scene, in which Z.S. allegedly occupied, belonged to Petitioner Fields. Indeed, Z.S. did not even identify the vehicle. Fifth, there was no physical evidence, i.e. DNA or fingerprint evidence, suggesting Z.S. was ever inside the vehicle. When collectively viewed, this lack of evidence is insufficient to support a conviction.

The State's failure to have Z.S. attempt to identify Petitioner Fields is devastating to the State's case because it placed identity squarely at issue. *See State v. Sims*, 110 So. 3d 113 (Fla. 1st DCA 2013). Similar to *Sims*, neither Petitioner Fields nor his vehicle can be tied to the alleged victim. Z.S. testified that she performed oral sex on an older, chubby African American male, who is approximately 5'5" tall. Not only is this evidence not compelling, but it does not describe Petitioner Fields. Petitioner Fields, while African American, is 5' 10" tall, 230 lbs, and was 52 years old at the time of the purported offense. This description does little to include or exclude Petitioner Fields from a significant portion of the city of Jacksonville's population.

Further, because there was no eyewitness testimony or physical evidence to the act itself, Z.S.'s testimony becomes more important. Z.S. testified as follows: (1) that she was a truant on the day of the incident; (2) that she was unable to recall whether the incident occurred in the morning, afternoon, evening, or even if it was day or night; (3) that the time of the incident, she was seeing a psychiatrist for anxiety and depression; (4) that she could not recall if anyone could have witnessed

what was going in the wooded area from the parking lot; (5) that she could not recall if she willingly performed the act; (6) that she could not remember "most things;" and (7) that she could not recall what she did all day at the State Attorney's Office on the day of jury selection, a mere three days before the trial. Most importantly, Z.S. candidly admitted that she had problems separating the truth from fiction. Additionally, there was no evidence to corroborate Z.S.'s testimony on direct examination, or legitimate basis to infer her testimony was credible.

Z.S.'s testimony on cross-examination, listed above, demonstrated that she was incompetent to testify. Generally speaking, every person is competent to be a witness, except as otherwise provided by statute. *See* §§ 914.07 & 90.601, Fla. Stat. However, a witness is incompetent to testify if the witness is unable to communicate to the jury, unable to understand their duty to tell the truth, or is unable to remember events. *See Hayward v. State*, 183 So. 3d 286 (Fla. 2015); *Rutherford v. Moore*, 774 So. 2d 637 (Fla. 2000); *Wingo v. State*, 158 So. 3d 743 (Fla. 2015). *See also* § 90.604, Fla. Stat. Here, Z.S.'s testimony soundly meets the incompetence standard annunciated in *Hayward*, *Rutherford*, and *Wingo*. First, Z.S. testified that she had difficulty, and, in fact, was being treated for her inability to discern truth from fiction. Secondly, Z.S. displayed a complete inability to remember the most basic details of the incident, i.e. whether it was day or night, morning or afternoon, or what she did only three days before trial. Indeed, Z.S. admitted that she had, for all intents-and-purposes, forgotten the incident.

Z.S.'s incompetency presented fatal issues for the State's case. For instance, the State could not establish either element of lewd and lascivious battery without Z.S.'s testimony.[9] Sexual union

---

[9] Section 800.04(4)(a), Florida Statutes, prohibits sexual activity with a person twelve years of age or older but less than sixteen years of age.

and the age of the alleged victim are the two essential elements needed to establish lewd and lascivious battery pursuant to section 800.004(4)(a), Florida Statutes. At trial, Z.S. was the only witness to testify to the allegedly lewd act and the only person to testify as to her age at the time of the incident. The State failed to establish through admissible physical evidence or independent eyewitness testimony that a sexual act occurred. Further, the State did not introduce a birth certificate to corroborate Z.S.'s testimony regarding her age. As such, the State never established a corpus for lewd and lascivious battery. This alone constituted a sufficient basis to grant Petitioner Fields' motions for judgment of acquittal.

The State's deficiencies were not cured by other witness testimony. Officer Gray was the only other witness present at the scene who testified at trial. Officer Gray testified that Petitioner Fields jumped out of the woods holding his penis, while Z.S. ran out of the woods some time later. This evidence was circumstantial and insufficient to sustain Petitioner Fields' conviction. Petitioner Fields' defense counsel argued that Petitioner Fields was in the woods using the bathroom. This defense explains Petitioner Fields' presence in the woods and the fact that Petitioner Fields' pants were down with his penis in his hand. Officer Gray did not testify at trial to any hearsay statements the alleged victim may have made.

Moreover, Z.S. may have been in the area that day for any purpose. Perhaps Z.S. noticed what she thought was an abandoned car and touched the passenger window as she peered through the glass to see if there was anything to steal. A latent print taken from the outside of the passenger's side door corroborates this theory. Then Z.S. was startled by Officer Gray's arrival and decided to hide in the woods. Z.S. testified that she ran out of the woods because she was scared of law enforcement, and Z.S.'s spontaneous utterances were likely a result of her status as a victim of a

human trafficking operation. The State's evidence adduced at trial failed to exclude these possibilities. Regardless, Z.S.'s presence at the scene was circumstantial evidence and not contrary to Petitioner Fields' defense.

Lastly, the jury undoubtedly and impermissibly stacked inferences to accept the State's theory of events and return a verdict of guilt. First, the jury had to infer that Z.S. described Petitioner Fields in her identification of the suspect. As mentioned above, her description of the suspect was incorrect by 5 inches in height and was extremely vague, failing to include or exclude Petitioner Fields from a significant portion of the Jacksonville community. Next, the jury must have found Z.S. credible. The jury had no reasonable basis to make positive inferences as to Z.S.'s credibility when, again, Z.S. testified that she had difficulty discerning truth from fiction, could not recall if the incident occurred in the day or night, candidly admitted that she had forgotten the majority of the incident, and could not testify as to what she had done at the State Attorney's Office merely three days before trial. And as mentioned above, Z.S. was incompetent to testify.

The jury's next impermissible inference was, evidently, accepting the State's explanation as to how Z.S. and Petitioner Fields arrived at the scene. The State claims the two rode together in Petitioner Fields' vehicle. This theory was thoroughly refuted by the lack of physical evidence the State offered on this point. As a preliminary matter, the State failed to link the vehicle to Petitioner Fields in any regard. The State failed to introduce a vehicle registration or license plate number would have linked Petitioner Fields to the car. The State also could have introduced DNA or fingerprint evidence that Petitioner Fields drove the vehicle, but this was not done.

Next, the State failed to establish any meaningful link between Z.S. and the vehicle. Crime scene technicians were unable to recover DNA or fingerprint evidence indicating that Z.S. was ever

inside the vehicle. The State did introduce a latent print allegedly belonging to Z.S., yet, as already mentioned, this was taken from the exterior of the vehicle and was consistent with someone bending over to look into the window of the car, possibly to commit a burglary. Additionally, the print does not refute Petitioner Fields' hypothesis of innocence because Z.S. could have approached the vehicle and touched the window while Petitioner Fields was in the woods using the bathroom.

In summation, the State offered no direct evidence of guilt at trial. The State's case was predicated almost entirely on Z.S.'s incompetent testimony, which was the State's sole source in attempting to establish a corpus for lewd and lascivious battery. Officer Gray's testimony, at most, created a mere suspicion of guilt. Courts have repeatedly found mere suspicion of guilt insufficient to sustain a conviction. *See Davis v. State*, 90 So. 2d 629, 631 (Fla. 1956); *Lynch v. State*, 293 So. 2d 44 (Fla. 1974), *State v. Law*, 559 So. 2d 187 (Fla. 1989); *Orme v. State*, 677 So. 2d 258 (Fla. 1996); *Sims*, 110 So. 3d 113; *Grandison v. State*, 160 So. 3d 90, 93 (Fla. lst DCA 2015). Further, competent and substantial evidence demonstrates that the jury's verdict and the state trial court's failure to grant the motions for judgment of acquittal were the product of impermissibly staking inferences. Consequently, Petitioner Fields' conviction violates *Winship*, *Davis* and their progeny and Petitioner Fields' conviction and sentence should be vacated.

Thus, for the reasons set forth above, the state trial court erred by denying Petitioner Fields' motions for judgment of acquittal. The state trial court's ruling denying the motions for judgment of acquittal and the state appellate court's affirmance were contrary to and an unreasonable application of *Winship*. Moreover, the state courts' decisions were based on an unreasonable determination of the facts in light of the evidence presented in the proceeding.

**Ground 7.**  **The state trial court erred by limiting defense counsel's cross-examination of the alleged victim.**

On direct appeal, Petitioner Fields alleged that the state trial court erred by limiting defense counsel's cross-examination of the alleged victim.  The Sixth Amendment to the Constitution guarantees the right of an accused in a criminal prosecution "to be confronted with the witnesses against him."  *Alaska v. Davis*, 415 U.S. 308, 315 (1974).  This right is guaranteed to defendants in both state and federal court.  *See Pointer v. Texas*, 380 U.S. 400 (1965).  Cross-examination is the principal means by which the believability of a witness and the truth of their testimony is tested. *See Davis*, 415 U.S. at 316.  The cross-examiner is not only allowed to delve into the witness' story to test the witness' perception and memory, but cross-examination is allowed for the purposes of impeachment to discredit a witness.  *See id.*  Attacks on a witness' credibility are often effectuated by means of cross-examination directed toward revealing the possible biases, prejudices, or ulterior motives of the witness as they may relate directly to issues or personalities in the case at hand.  *See id.*  The partiality of a witness is subject to exploration at trial, and is "always relevant as discrediting the witness and affecting the weight of his testimony."  *Id.*

During the trial in this case, the state trial court impermissibly narrowed the scope of defense counsel's cross-examination of the alleged victim when defense counsel was not allowed to inquire into the alleged victim's involvement in a human trafficking ring.  The two questions proffered were as follows: (1) "Isn't it a fact that you were concerned that you could be charged in a federal human trafficking case;" and (2) "Isn't it a fact you learned all about the acts of prostitution and at what age [sic] based upon your involvement in the human trafficking case and your conversations with the federal United States attorney?" (T-472).  These questions were entirely proper to determine whether

the alleged victim's testimony was motivated by fear of federal indictment, and whether she learned

of how to manipulate her responses to law enforcement to avoid prosecution in cases dealing with

similar subject matters. Caselaw is clear that the state trial court's ruling violated Petitioner Fields'

rights pursuant to the Confrontation Clause. *See Davis*; *Moreno v. State*, 418 So. 2d 1223, 1226

(Fla. 3d DCA 1982) (holding that the trial court's refusal to allow cross-examination of a key state

witness regarding criminal charges brought against them was reversible error); *Crespo v. State*, 344

So. 2d 598 (Fla. 3d DCA 1977) (holding that the trial court committed reversible error in precluding

defense counsel from cross-examining the State's witness regarding an on-going criminal charge

against them); *Young v. State*, 522 So. 2d 540 (Fla. 3d DCA 1988) (holding trial court's restriction

on defendant's right to cross-examine on matters crucial to credibility violated the defendant's right

to confrontation); *Sadler v. State*, 509 So. 2d 1139 (Fla. 5th DCA 1987) (holding that precluding

defense counsel from proffering rebuttal testimony violates substantive due process and fair play

requiring remand for a new trial); *Kelly v. State*, 425 So. 2d 81 (Fla. 2d DCA 1982) (holding denial

of right to explore basis for impeachment requires remand for a new trial); *Chandler v. State*, 702

So. 2d 186, 195 (Fla. 1997) (holding that a party has the right to inquire into matters that affect the

truthfulness of the witnesses' testimony); *Gibson v. State*, 661 So. 2d 288, 291 (Fla. 1995) (holding

that Florida's evidence code liberally permits the introduction of evidence to demonstrate the bias

or motives of a witness).

  Thus, for the reasons set forth above, the state trial court erred by limiting defense counsel's

cross-examination of the alleged victim. The state courts' rulings in this case were contrary to and

an unreasonable application of *Davis* and Petitioner Wright's Sixth Amendment Confrontation

Clause rights. Additionally, the state courts' rulings were based on an unreasonable determination

of the facts in light of the evidence contained in the state court record.

13. If any of the grounds listed in 12 were not previously presented in any other court, state or federal, state *briefly* what grounds were not so presented, and give your reasons for not presenting them:

    The grounds raised in this petition were properly presented in state court.

14. Do you have any petition or appeal now pending in any court, either state or federal, as to the judgment under attack?

    Yes ( )    No (✔)

15. Give the name and address, if known, of each attorney who represented you in the following stages of the judgment attacked herein:

    (a) At preliminary hearing: N/A

    (b) At arraignment and plea: N/A

    (c) At trial: Robert I. Barrar 6619 South Dixie Highway 311, Miami, Florida 33143

    (d) At sentencing: Mr. Barrar

    (e) On appeal: Ann E. Finnell and Dane Jensen, 2114 Oak Street, Jacksonville, Florida 32204

    (f) In any postconviction proceeding: Gonzalo Andux and Vanessa Newtson, 2114 Oak Street, Jacksonville, Florida 32204

    (g) On appeal from any adverse ruling in a post-conviction proceeding: undersigned counsel

16. Were you sentenced on more than one count of an indictment, or on more than one indictment, in the same court and at the same time?
    Yes ( )    No (✔)

17. Do you have any future sentence to serve after you complete the sentence imposed by the judgment under attack?
    Yes ( )    No (✔)

18. TIMELINESS OF PETITION: If your judgment of conviction became final over one year ago, you must explain why the one-year statute of limitations as contained in 28 U.S.C. § 2244(d) does not bar your petition: Petitioner Fields' conviction and sentence became final on September 26, 2017 – when the ninety-day period for filing a petition for writ of certiorari in the Supreme Court expired. However, the one-year limitations period was tolled on June

21, 2018, when Petitioner Fields filed his Florida Rule of Criminal Procedure 3.850 state postconviction motion.  The limitations did not begin to run again until May 7, 2020 – when the mandate was issued following the affirmance of the denial of Petitioner Fields' state postconviction motion.

Wherefore, Petitioner Fields prays that the Court will grant him the relief to which he is entitled in this proceeding.

**Oath**

I declare (or certify, verify, or state) under penalty or perjury that the foregoing is true and correct. Executed on August 6, 2020:

/s/ Michael Ufferman on behalf of Gregory Fields

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY a true and correct copy of the foregoing instrument has been furnished

to:

        Office of the Attorney General
        PL01, The Capitol
        Tallahassee, Florida 32399-1050
        Email: criminalappealsintake@myfloridalegal.com

by email on August 6, 2020;

        Mark S. Inch, Secretary
        Florida Department of Corrections
        501 South Calhoun Street
        Tallahassee, Florida 32399-2500

by U.S. mail delivery on August 6, 2020.

Respectfully submitted,

/s/ Michael Ufferman
MICHAEL UFFERMAN
Michael Ufferman Law Firm, P.A.
2022-1 Raymond Diehl Road
Tallahassee, Florida 32308
(850) 386-2345/fax (850) 224-2340
FL Bar No. 114227
Email: ufferman@uffermanlaw.com

Counsel for Petitioner **FIELDS**