**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF FLORIDA**
**JACKSONVILLE DIVISION**

GREGORY KAZON FIELDS,

      Petitioner,

v.                                                            Case No. 3:20-cv-881-TJC-PDB

SECRETARY, FLORIDA
DEPARTMENT OF CORRECTIONS,
et al.,

      Respondents.

_____

## ORDER

### I.    Status

Petitioner, an inmate of the Florida penal system, initiated this case by filing a pro se Petition for Writ of Habeas Corpus Under 28 U.S.C. § 2254. Doc. 1. He is challenging a state court (Duval County, Florida) judgment of conviction for lewd and lascivious battery. He is a designated sex offender serving a fifteen-year term of incarceration. Respondents have responded. See

Doc. 7; Resp.[1] Petitioner replied. <u>See</u> Doc. 8. This case is ripe for review.[2]

## II.   <u>Governing Legal Principles</u>

### A. Standard of Review

The Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA) governs a state prisoner's federal habeas corpus petition. <u>See</u> <u>Ledford v.</u> <u>Warden, Ga. Diagnostic & Classification Prison</u>, 818 F.3d 600, 642 (11th Cir. 2016), <u>cert.</u> <u>denied</u>, 137 S. Ct. 1432 (2017). "'The purpose of AEDPA is to ensure that federal habeas relief functions as a guard against extreme malfunctions in the state criminal justice systems, and not as a means of error correction.'" <u>Id.</u> (quoting <u>Greene v. Fisher</u>, 565 U.S. 34, 38 (2011)).

The first task of the federal habeas court is to identify the last state court decision, if any, that adjudicated the petitioner's claims on the merits. <u>See</u> <u>Marshall v. Sec'y Fla. Dep't of Corr.</u>, 828 F.3d 1277, 1285 (11th Cir. 2016). The

---

[1] Attached to the Response are several exhibits. <u>See</u> Docs. 9-1 to 9-12; S-14 The Court cites the exhibits as "Resp. Ex."

[2] "In a habeas corpus proceeding, the burden is on the petitioner to establish the need for an evidentiary hearing." <u>Jones v. Sec'y, Fla. Dep't of Corr.</u>, 834 F.3d 1299, 1318 (11th Cir. 2016) (citing <u>Chavez v. Sec'y Fla. Dep't of Corr.</u>, 647 F.3d 1057, 1060 (11th Cir. 2011)). "In deciding whether to grant an evidentiary hearing, a federal court must consider whether such a hearing could enable an applicant to prove the petition's factual allegations, which, if true, would entitle the applicant to federal habeas relief." <u>Schriro v. Landrigan</u>, 550 U.S. 465, 474 (2007) (citation omitted). "It follows that if the record refutes the applicant's factual allegations or otherwise precludes habeas relief, a district court is not required to hold an evidentiary hearing." <u>Id.</u> The Court finds that "further factual development" is unnecessary. <u>Turner v. Crosby</u>, 339 F.3d 1247, 1275 (11th Cir. 2003). Thus, an evidentiary hearing will not be conducted.

state court need not issue an opinion explaining its rationale for the state court's decision to qualify as an adjudication on the merits. See Harrington v. Richter, 562 U.S. 86, 100 (2011). When the state court's adjudication on the merits is unaccompanied by an explanation,

> the federal court should "look through" the unexplained decision to the last related state-court decision that does provide a relevant rationale. It should then presume that the unexplained decision adopted the same reasoning. But the State may rebut the presumption by showing that the unexplained affirmance relied or most likely did rely on different grounds than the lower state court's decision, such as alternative grounds for affirmance that were briefed or argued to the state supreme court or obvious in the record it reviewed.

Wilson v. Sellers, 138 S. Ct. 1188, 1192 (2018).

When a state court has adjudicated a petitioner's claims on the merits, a federal court cannot grant habeas relief unless the state court's adjudication of the claim was "contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States," or "was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding," 28 U.S.C. § 2254(d)(1), (2). A state court's factual findings are "presumed to be correct" unless rebutted "by clear and convincing evidence." Id. § 2254(e)(1).

> AEDPA "imposes a highly deferential standard for evaluating state court rulings" and "demands that state-court decisions be given the benefit of the doubt."

3

Renico v. Lett, 559 U.S. 766, 773 (2010) (internal quotation marks omitted). "A state court's determination that a claim lacks merit precludes federal habeas relief so long as fairminded jurists could disagree on the correctness of the state court's decision." Harrington v. Richter, 562 U.S. 86, 101 (2011) (internal quotation marks omitted). "It bears repeating that even a strong case for relief does not mean the state court's contrary conclusion was unreasonable." Id. [at 102] (citing Lockyer v. Andrade, 538 U.S. 63, 75 (2003)). The Supreme Court has repeatedly instructed lower federal courts that an unreasonable application of law requires more than mere error or even clear error. See, e.g., Mitchell v. Esparza, 540 U.S. 12, 18 (2003); Lockyer, 538 U.S. at 75 ("The gloss of clear error fails to give proper deference to state courts by conflating error (even clear error) with unreasonableness."); Williams v. Taylor, 529 U.S. 362, 410 (2000) ("[A]n unreasonable application of federal law is different from an incorrect application of federal law.").

Bishop v. Warden, GDCP, 726 F.3d 1243, 1253-54 (11th Cir. 2013) (internal citations modified).

## B. Exhaustion and Procedural Default

There are prerequisites to federal habeas review. Before bringing a § 2254 habeas action in federal court, a petitioner must exhaust all state court remedies available for challenging his state conviction. See 28 U.S.C. § 2254(b)(1)(A). To exhaust state remedies, the petitioner must "fairly present[]" every issue raised in his federal petition to the state's highest court, either on direct appeal or on collateral review. Castille v. Peoples, 489 U.S. 346, 351 (1989) (emphasis omitted). Thus, to properly exhaust a claim, "state prisoners

4

must give the state courts one full opportunity to resolve any constitutional issues by invoking one complete round of the State's established appellate review process." O'Sullivan v. Boerckel, 526 U.S. 838, 845 (1999); see also Pope v. Rich, 358 F.3d 852, 854 (11th Cir. 2004) (noting "that Boerckel applies to the state collateral review process as well as the direct appeal process.").

In addressing exhaustion, the United States Supreme Court explained:

> Before seeking a federal writ of habeas corpus, a state prisoner must exhaust available state remedies, 28 U.S.C. § 2254(b)(1), thereby giving the State the "'opportunity to pass upon and correct' alleged violations of its prisoners' federal rights.'" Duncan v. Henry, 513 U.S. 364, 365, 115 S. Ct. 887, 130 L.Ed.2d 865 (1995) (per curiam) (quoting Picard v. Connor, 404 U.S. 270, 275, 92 S. Ct. 509, 30 L.Ed.2d 438 (1971)). To provide the State with the necessary "opportunity," the prisoner must "fairly present" his claim in each appropriate state court (including a state supreme court with powers of discretionary review), thereby alerting that court to the federal nature of the claim. Duncan, supra, at 365-366, 115 S. Ct. 887; O'Sullivan v. Boerckel, 526 U.S. 838, 845, 119 S. Ct. 1728, 144 L.Ed.2d 1 (1999).

Baldwin v. Reese, 541 U.S. 27, 29 (2004).

A state prisoner's failure to properly exhaust available state remedies results in a procedural default which raises a potential bar to federal habeas review. The United States Supreme Court has explained the doctrine of procedural default as follows:

> Federal habeas courts reviewing the constitutionality of a state prisoner's conviction and sentence are guided

5

by rules designed to ensure that state-court judgments are accorded the finality and respect necessary to preserve the integrity of legal proceedings within our system of federalism. These rules include the doctrine of procedural default, under which a federal court will not review the merits of claims, including constitutional claims, that a state court declined to hear because the prisoner failed to abide by a state procedural rule. <u>See</u>, <u>e.g.</u>, <u>Coleman</u>,[3] <u>supra</u>, at 747–748, 111 S. Ct. 2546; <u>Sykes</u>,[4] <u>supra</u>, at 84–85, 97 S. Ct. 2497. A state court's invocation of a procedural rule to deny a prisoner's claims precludes federal review of the claims if, among other requisites, the state procedural rule is a nonfederal ground adequate to support the judgment and the rule is firmly established and consistently followed. <u>See</u>, <u>e.g.</u>, <u>Walker v. Martin</u>, 562 U.S. --, --, 131 S. Ct. 1120, 1127–1128, 179 L.Ed.2d 62 (2011); <u>Beard v. Kindler</u>, 558 U.S. --, --, 130 S. Ct. 612, 617–618, 175 L.Ed.2d 417 (2009). The doctrine barring procedurally defaulted claims from being heard is not without exceptions. A prisoner may obtain federal review of a defaulted claim by showing cause for the default and prejudice from a violation of federal law. <u>See</u> <u>Coleman</u>, 501 U.S., at 750, 111 S. Ct. 2546.

<u>Martinez v. Ryan</u>, 566 U.S. 1, 9-10 (2012). Thus, procedural defaults may be excused under certain circumstances. Notwithstanding that a claim has been procedurally defaulted, a federal court may still consider the claim if a state habeas petitioner can show either (1) cause for and actual prejudice from the default; or (2) a fundamental miscarriage of justice. <u>Ward v. Hall</u>, 592 F.3d 1144, 1157 (11th Cir. 2010). For a petitioner to establish cause and prejudice,

---

[3] <u>Coleman v. Thompson</u>, 501 U.S. 722 (1991).

[4] <u>Wainwright v. Sykes</u>, 433 U.S. 72 (1977).

> the procedural default "must result from some objective factor external to the defense that prevented [him] from raising the claim and which cannot be fairly attributable to his own conduct." McCoy v. Newsome, 953 F.2d 1252, 1258 (11th Cir. 1992) (quoting Carrier, 477 U.S. at 488, 106 S. Ct. 2639).[5] Under the prejudice prong, [a petitioner] must show that "the errors at trial actually and substantially disadvantaged his defense so that he was denied fundamental fairness." Id. at 1261 (quoting Carrier, 477 U.S. at 494, 106 S. Ct. 2639).

Wright v. Hopper, 169 F.3d 695, 706 (11th Cir. 1999).

In the absence of a showing of cause and prejudice, a petitioner may receive consideration on the merits of a procedurally defaulted claim if the petitioner can establish that a fundamental miscarriage of justice, the continued incarceration of one who is actually innocent, otherwise would result. The Eleventh Circuit has explained:

> [I]f a petitioner cannot show cause and prejudice, there remains yet another avenue for him to receive consideration on the merits of his procedurally defaulted claim. "[I]n an extraordinary case, where a constitutional violation has probably resulted in the conviction of one who is actually innocent, a federal habeas court may grant the writ even in the absence of a showing of cause for the procedural default." Carrier, 477 U.S. at 496, 106 S. Ct. at 2649. "This exception is exceedingly narrow in scope," however, and requires proof of actual innocence, not just legal innocence. Johnson v. Alabama, 256 F.3d 1156, 1171 (11th Cir. 2001).

---

[5] Murray v. Carrier, 477 U.S. 478 (1986).

<u>Ward</u>, 592 F.3d at 1157. "To meet this standard, a petitioner must 'show that it is more likely than not that no reasonable juror would have convicted him' of the underlying offense." <u>Johnson v. Alabama</u>, 256 F.3d 1156, 1171 (11th Cir. 2001) (quoting <u>Schlup v. Delo</u>, 513 U.S. 298, 327 (1995)). Additionally, "'[t]o be credible,' a claim of actual innocence must be based on reliable evidence not presented at trial." <u>Calderon v. Thompson</u>, 523 U.S. 538, 559 (1998) (quoting <u>Schlup</u>, 513 U.S. at 324). With the rarity of such evidence, in most cases, allegations of actual innocence are ultimately summarily rejected. <u>Schlup</u>, 513 U.S. at 324.

### C. Ineffective Assistance of Counsel

"The Sixth Amendment guarantees criminal defendants effective assistance of counsel. That right is denied when a defense counsel's performance falls below an objective standard of reasonableness and thereby prejudices the defense." <u>Yarborough v. Gentry</u>, 540 U.S. 1, 5 (2003) (per curiam) (citing <u>Wiggins v. Smith</u>, 539 U.S. 510, 521 (2003), and <u>Strickland v. Washington</u>, 466 U.S. 668, 687 (1984)). To establish ineffective assistance, a person must show that: (1) counsel's performance was outside the wide range of reasonable, professional assistance; and (2) counsel's deficient performance prejudiced the challenger in that there is a reasonable probability that the outcome of the proceeding would have been different absent counsel's deficient performance. <u>Strickland</u>, 466 U.S. at 687.

Notably, there is no "iron-clad rule requiring a court to tackle one prong of the <u>Strickland</u> test before the other." <u>Ward v. Hall</u>, 592 F.3d 1144, 1163 (11th Cir. 2010). Since both prongs of the two-part <u>Strickland</u> test must be satisfied to show a Sixth Amendment violation, "a court need not address the performance prong if the petitioner cannot meet the prejudice prong, and vice-versa." <u>Id.</u> (citing <u>Holladay v. Haley</u>, 209 F.3d 1243, 1248 (11th Cir. 2000)). As stated in <u>Strickland</u>: "If it is easier to dispose of an ineffectiveness claim on the ground of lack of sufficient prejudice, which we expect will often be so, that course should be followed." 466 U.S. at 697.

"The question is not whether a federal court believes the state court's determination under the <u>Strickland</u> standard was incorrect but whether that determination was unreasonable - a substantially higher threshold." <u>Knowles v. Mirzayance</u>, 556 U.S. 111, 123 (2009) (quotation marks omitted). If there is "any reasonable argument that counsel satisfied <u>Strickland</u>'s deferential standard," then a federal court may not disturb a state-court decision denying the claim. <u>Richter</u>, 562 U.S. at 105. As such, "[s]urmounting <u>Strickland</u>'s high bar is never an easy task." <u>Padilla v. Kentucky</u>, 559 U.S. 356, 371 (2010). "Reviewing courts apply a 'strong presumption' that counsel's representation was 'within the wide range of reasonable professional assistance.'" <u>Daniel v. Comm'r, Ala. Dep't of Corr.</u>, 822 F.3d 1248, 1262 (11th Cir. 2016) (quoting <u>Strickland</u>, 466 U.S. at 689). "When this presumption is combined with §

2254(d), the result is double deference to the state court ruling on counsel's performance." Id. (citing Richter, 562 U.S. at 105); see also Evans v. Sec'y, Dep't of Corr., 703 F.3d 1316, 1333-35 (11th Cir. 2013) (en banc) (Jordan, J., concurring); Rutherford v. Crosby, 385 F.3d 1300, 1309 (11th Cir. 2004).

### III.   **Relevant Procedural History and Evidence Presented at Trial**

In February 2014, Petitioner was arrested and charged with one count of lewd and lascivious battery on a person twelve years of age or older, but less than sixteen years of age. Resp. Ex. A at 1-4, 8-9. During Petitioner's jury trial, the victim, Z.S., testified that she was fifteen years old on the day Petitioner abused her. Resp. Ex. D at 370. According to Z.S., on that day, she was walking home when a black male, who was driving a "golden brown" vehicle, pulled up to her and asked if she needed a ride. Id. at 371. Z.S. agreed and got into the car with the man and advised him where she lived. Id. Z.S. stated that the man, however, began driving in the wrong direction and pulled into the parking lot of an abandoned restaurant. Id. The man parked his car in the back of the lot, got out of the vehicle, and told Z.S. to also get out. Id. at 372-73. Z.S. got out of the car and the man put his arm around her and led her down a path into a nearby wooded area. Id. at 373. Once in the woods, the man asked Z.S. to perform oral sex on him in exchange for money. Id. at 373-74. Z.S. stated that she began performing the sex act and about two minutes later, a police officer walked up. Id. at 374-75. She then told the officer her age and she was taken to

the police station for questioning. Id. at 375.

During cross-examination, Z.S. testified that she did not know if it was morning, afternoon, or evening when the incident occurred, and she was not going to school at that time. Id. at 376-77. Z.S. explained that when the assault occurred, she was a runaway and was also receiving psychiatric treatment for anxiety, depression, and an "inability to separate truth from reality." Id. at 386. Z.S. also testified that she does not remember what she told police and she does not remember most events that occurred that day. Id. at 389. According to Z.S., however, she remembered Petitioner making her perform oral sex on him. Id. at 393-94.

Officer John Gray testified that on the day of the incident, he was working as a patrol officer. Id. at 398. He testified that during his patrol, he pulled into the parking lot of an abandoned McDonalds where he often parked to work on written police reports. Id. at 399. According to Officer Gray, on the days he parked in the lot, it was typically empty, but on that day, he saw a parked car in the back of the lot. Id. Officer Gray noticed that the vehicle was empty and when he exited his patrol car and walked up to the car, he noticed that the hood of the car was warm, which suggested that it had recently been parked. Id. at 399-400. Officer Gray explained that the car concerned him because it was parked in the vicinity of a large, wooded area where he believed the driver may be hiding. Id. at 400. Officer Gray stated he walked to the line of the wooded

area and Petitioner immediately began walking out of the woods towards Officer Gray. Id. at 401. According to Officer Gray, Petitioner's shirt was pulled up over his head and behind his neck and he was holding his exposed penis. Id. at 401. Officer Gray explained that when Petitioner saw him, Petitioner began acting erratic and screamed that he needed to go to the bathroom. Id. at 403. At that time, Officer Gray saw another individual running from the same wooded area Petitioner emerged from. Id. at 404. Officer Gray ordered Petitioner to lay on the ground and issued verbal commands to the other individual running. Id. Petitioner complied with Officer Gray's commands and backup officers arrived to look for the other individual. Id. Officer Gray explained he then found Z.S. lying on the ground in a fetal position and acting frantic and scared. Id. at 405. Officers took Petitioner and Z.S. to the station for questioning. Id. at 405-06. Detective Harmony Brooks testified that she took latent fingerprints from the passenger side door of Petitioner's vehicle and submitted them for testing. Id. at 414. Detective Richard Kocik testified that he tested the prints retrieved by Brooks and determined that the prints matched Z.S. Id. at 441.

After Kocik's testimony, the state rested its case and trial counsel moved for a judgment of acquittal. Id. at 450. The trial court denied the motion. Id. at 455. Petitioner presented no defense witnesses on his behalf. Id. at 485-86, 472. The jury ultimately found Petitioner guilty of lewd or lascivious battery. Id. at 561. The trial court sentenced him to a fifteen-year term of incarceration.

Petitioner, with help from appellate counsel, sought a direct appeal. Resp. Ex. F. The First District Court of Appeal per curiam affirmed Petitioner's judgment and sentence without a written opinion. Resp. Ex. I.

## III.   The Petition

### A. Ground One

Petitioner argues that his trial counsel was ineffective for failing to review discovery documents with him before trial and failing to question the victim about her erroneous pretrial description of Petitioner's genitals. Doc. 1 at 6.

Petitioner, with help from postconviction counsel, raised this issue in his Florida Rule of Criminal Procedure 3.850 motion filed in state court. Resp. Ex. J at 12-13. The trial court directed the state to file a response to the claim. Id. at 29. The state responded as follows:

> In Ground Two of his Motion, the Defendant alleges ineffective assistance of counsel for his trial counsel's failure to review CCR# 2014-77649 Supplemental Report #1 with the Defendant. In the narrative portion of this Report, the victim described the defendant's penis as "circumcised without any hair." The Defendant alleges that his penis is not circumcised and defense counsel failed to address this fact during the trial and failed to cross-examine and impeach the victim on her misidentification of a critical piece of evidence.
>
> CCR# 2014-77649 Supplemental Report #1 was provided to the defense as a part of the State's discovery obligation. On January 19, 2016, Judge Aho conducted a Final Pre-Trial colloquy on the record with Mr. Fields

13

and his trial counsel, Mr. Barrar, to ensure that they were ready and prepared for trial. During this colloquy, the following sworn testimony was provided by the defense, in pertinent part:

> The Court: Have all the discovery, Mr. Barrar, including names of witnesses, copies of tapes, witness statements, and all of the discovery provided by the State of Florida been provided to and reviewed with your client, Mr. Fields?

> Mr. Barrar: I have gone over everything with him . . . .

> The Court: Very well. So, Mr. Barrar, would it be fair to say that your investigation of this matter is now complete?

> Mr. Barrar: Oh yes, Judge. We are ready to go. As a matter of fact, if we did not go today, we would have filed a demanded (sic) for speedy trial. And I had already discussed that with Mr. Fields . . . .

> The Court: Is there anything else you want your attorney to do to ensure that you are fully prepared for jury selection later on today?

> Defendant: No.

Here, the record refutes the Defendant's claim that CCR# 2014-77649 Supplemental Report #1 was not provided and reviewed with the Defendant. Mr. Barrar expressly stated that he had gone over all of the discovery with his client. The Defendant then agreed on the record that there was nothing else he wanted his defense attorney to do before proceeding to trial.

14

Not only does the record refute the Defendant's claim that he was not provided CCR# 2014-77649 Supplemental Report #1 but the Defendant has also failed to show any prejudice by this alleged omission because the victim was effectively impeached by trial counsel regarding many other topics. A defendant fails to establish prejudice if a witness is impeached, albeit in a different area, and the defense attorney extensively argues the impeachment and lack of credibility in closing argument. Mungin v. State, 932 So. 2d 986, 998-999 (Fla. 2006).

According to Section 90.608 of the Florida Statutes (2018), impeachment may be accomplished by: "(1) Introducing statements of the witness which are inconsistent with the witness's present testimony, (2) Showing that the witness is biased, (3) Attacking the character of the witness in accordance with the provisions of s. 90.609 or s. 90.610, (4) Showing a defect of capacity, ability, or opportunity in the witness to observe, remember, or recount the matters about which the witness testified, (5) Proof by other witnesses that material facts are not as testified to by the witness being impeached." In order to prove ineffective assistance of counsel based on the failure to adequately cross or impeach witnesses, the defendant must prove that counsel's questioning was so defective that it "so affected the fairness and reliability of the proceeding that confidence in the outcome is undermined." Jennings v. State, 123 So. 3d 1101 (Fla. 2013).

Although Mr. Barrar did not ask the victim about her alleged misidentification of the Defendant's penis, he did effectively cross-examine and impeach the victim on many other matters. For example, the record shows that defense counsel attacked the victim's credibility by establishing that she was a runaway, that she was not in school or employed, and that she was being treated by a psychiatrist for anxiety and depression and for her inability to separate truth from fiction. The record also establishes that defense counsel impeached the victim

by showing that she did not remember specific details of the incident. The record also conclusively establishes that defense counsel highlighted these deficiencies in closing argument. For example, defense counsel argued that the victim's testimony was not reliable because she could not identify the Defendant as her assailant and because she could not separate the difference between truth and reality. Although the Defendant evidently wanted his trial attorney to impeach the victim more than what occurred, a defendant is only entitled to a fair trial, not a perfect trial, as there is no such thing as a perfect trial. Bell v. State, 930 So. 2d 779, 783 (Fla. 4th DCA 2006) and Brunelle v. State, 456 So. 2d 1324 (Fla. 4th DCA 1984).

The record rebuts the Defendant's allegations that he was not provided with CCR# 2014-77649 Supplemental Report #1 and shows that the victim was effectively impeached on various other matters during cross-examination and that these matters were argued extensively by his defense counsel during closing argument. Accordingly, the State suggests this Court may summarily deny Ground Two of the Defendant's Motion based upon the record and the arguments contained within this Response, without holding an evidentiary hearing.

Resp. Ex. J at 39-41 (record citations omitted). The trial court adopted the state's response and summarily denied the claim, explaining it "carefully reviewed the response and f[ound] that it address[ed] [the] claim with both factual and legal accuracy" and "therefore [found] it appropriate and judicially efficient to adopt the State's response as the [trial] [c]ourt's findings." Id. at 82. Petitioner, with help from postconviction counsel, appealed (Resp. Ex. K), and the First DCA per curiam affirmed the trial court's denial without a written

opinion (Resp. Ex. M).

The Court addresses the claim in accordance with the deferential standard for federal court review of state court adjudications. As the state court noted, during counsel's cross-examination of the victim, counsel impeached her based on her inability to recall the events that occurred on the day of the incident. Indeed, counsel elicited testimony from the victim that she did not recall what time of day the incident occurred, and she testified that she had a history of not being able to "separate truth from reality." Also, the state's case did not solely rely on the victim's recollection of the assault but also focused on the testimony of Officer Gray who witnessed Petitioner and the victim in a problematic state. Considering this record evidence, the Court finds counsel's conduct was not deficient and Petitioner cannot demonstrate prejudice under Strickland. Thus, upon thorough review of the record and the applicable law, the Court finds that the state court's decision to deny Petitioner's claim was neither contrary to nor an unreasonable application of federal law, and it was not based on an unreasonable determination of the facts given the evidence presented to the state court. See 28 U.S.C. § 2254(d). Ground One is denied.

### B. Ground Two

Petitioner asserts that his trial counsel was ineffective for failing to present six alibi witnesses. Doc. 1 at 15. Petitioner raised this claim in his Rule 3.850 motion. Resp. Ex. J at 13-15. The state responded to the claim:

In Ground Three of his Motion, the Defendant alleges ineffective assistance of counsel for his trial counsel's failure to call six (6) defense alibi witnesses at trial that would have testified that the Defendant was at the doctor's office during the incident, showing the jury that the sequence of events provided by the victim could not have occurred.

In the instant case, Officer Gray testified at trial that he pulled into a parking lot behind an abandoned restaurant and observed a vehicle near the wood line of some trees. He stated that he touched the hood of the car and it felt warm. He stated that as he was approaching the woods, the Defendant came running out, with his shirt over his head and his penis in hand. Officer Gray then testified that he saw the victim, who was crouching down in the woods. Officer Gray testified that the Defendant was taken into custody at the scene. Officer Gray identified [ ] Mr. Fields as the Defendant in open court during trial. On June 19, 2015, the Defendant testified under oath that he was in the woods and approached by a police officer during the time of the incident.[6]

"Whether to call a witness at trial is the type of strategic decision for which the lawyer's professional judgment is generally not subject to postconviction second-guessing, as the court held in Strickland v. Washington." Ferguson[v. State, 101 So. 3d 895, 897 (Fla. 4th DCA 2012).] "[A] court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance; that is, the defendant must overcome the presumption that, under the circumstances, the challenged action 'might be considered sound trial strategy.'" Strickland[, 466 U.S.] at 689 (quoting Michel v. Louisiana, 350 U.S. 91, 101 (1955)).

---

[6] On June 19, 2015, the trial court conducted a pretrial hearing on Petitioner's motion to suppress, during which Petitioner testified. Resp. Ex. B at 333-35.

> It was uncontroverted and conclusively established by the evidence that the Defendant was present at the incident location and taken into custody at the scene. Defense counsel acted well within the scope of professional assistance by not putting on an alibi defense when the defendant previously admitted that he was at the scene, where law enforcement stopped him at the scene, and where he was taken into custody at the scene. Clearly, defense counsel's decision not to call witnesses that would squarely contradict the Defendant's prior sworn testimony and all of the other evidence in the record cannot be deemed deficient or ineffective. Accordingly, since the Defendant has failed to show a prima facie case for relief as to Ground Three regarding either a legal deficiency or prejudice to him, the State suggests this court may summarily deny Ground Three of the Defendant's Motion based upon the record and the arguments contained within this Response, without holding an evidentiary hearing.

Resp. Ex. J at 42-43 (record citations omitted). The trial court adopted the state's response and summarily denied the claim, explaining it "carefully reviewed the response and f[ound] that it address[ed] [the] claim with both factual and legal accuracy" and "therefore [found] it appropriate and judicially efficient to adopt the State's response as the [trial] [c]ourt's findings." Id. at 82. Petitioner, with help from postconviction counsel, appealed (Resp. Ex. K), and the First DCA per curiam affirmed the trial court's denial without a written opinion (Resp. Ex. M).

The Court addresses the claim in accordance with the deferential standard for federal court review of state court adjudications. Upon thorough review of the record and the applicable law, the Court finds that the state court's

decision to deny Petitioner's claim was neither contrary to nor an unreasonable application of <u>Strickland</u>, and it was not based on an unreasonable determination of the facts given the evidence presented to the state court. <u>See</u> 28 U.S.C. § 2254(d). Ground Two is denied.

## C. Ground Three

Petitioner argues his trial attorney was ineffective for failing to depose witnesses before trial. Doc. 1 at 17. Petitioner raised this claim in this Rule 3.850 motion. Resp. Ex. J at 10-12. The state filed a response arguing:

> In Ground One of his Motion, the Defendant alleges ineffective assistance of counsel for his trial counsel's failure to investigate and depose the State's ten (10) category A witnesses, including the listed victim in the case. Specifically, the Defendant alleges that if the victim in this case had been deposed, defense counsel would have known about the victim's inability to: (1) identify her accuser, (2) make an in-court identification, (3) remember the specifics of what happened on February 3, 2014, and (4) identify the vehicle she was in on February 3, 2014. Further, the Defendant alleges that if the victim had been deposed, defense counsel would have known about information regarding the victim's educational background and mental health and would have known that the victim was also a victim in a federal human trafficking case. The Defendant alleges that had the victim been deposed, his trial counsel would have been able to formulate a proper defense, attack the victim's credibility, and demonstrate to the jury that he was unjustly accused.
>
> Counsel's decision of whether or not to interview, depose or cross-examine certain witnesses or potential witnesses are tactical choices and are within the

standard of competency expected. <u>Ferguson</u>, 101 So. 3d [at] 897-98 [ ]. "[A] court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance; that is, the defendant must overcome the presumption that, under the circumstances, the challenged action 'might be considered sound trial strategy'" <u>Strickland</u>, [466 U.S.] at 689 (quoting <u>Michel</u>[ ], 350 U.S. [at] 101[ ]. "[I]f the defendant consents to counsel's strategy, there is no merit to a claim of ineffective assistance of counsel." <u>Gamble v. State</u>, 877 So. 2d 706, 714 (Fla. 2004). <u>See also</u> <u>Mendoza v. State</u>, 81 So. 3d 579, 582 (Fla. 3d DCA 2012) ("[N]ot only is Mendoza unable to rebut the presumption that counsel's decision was reasonable and strategic, Mendoza's express agreement to such a decision is fatal to his claim of ineffective assistance of counsel.").

On January 19, 2016, Judge Aho conducted a Final Pre-Trial colloquy on the record with Mr. Fields and his trial counsel, Mr. Barrar, to ensure that they were ready and prepared for trial. During this colloquy, the following sworn testimony was provided by defense counsel and Mr. Fields:

> The Court: Very well. And to your attorney has all the discovery been completed Mr. Barrar?

> Mr. Barrar: Judge, as a strategic matter, I didn't take deposition (sic). But as you recall, we had rather lengthy evidentiary hearings. So as far as I am concerned, the answer is yes.

> The Court: Very well. Mr. Barrar, I understand what you just said about your position about depositions. But my question is have all depositions that you deem necessary been taken?

> Mr. Barrar: Well, I didn't take any judge.
>
> The Court: And you deem them to be non-necessary; is that correct?
>
> Mr. Barrar: Correct.
>
> The Court: And you discussed that with your client?
>
> Mr. Barrar: I did.
>
> The Court: And Mr. Fields, you are [in] agreement with your lawyer not taking depositions?
>
> The Defendant: Yes, Judge.
>
> Here, the record establishes that the Defendant provided sworn testimony that he was in agreement with his defense counsel's strategy not to take depositions. This claim should be summarily denied because when a defendant consents on the record to counsel's strategy, there is no merit to a claim of ineffective assistance of counsel. See Ferguson, [101 So. 3d] at 897-98 ("[A]ppellant consented on the record to this strategy. That is fatal to his claim").

Resp. Ex. J at 38-39 (record citations omitted). The trial court adopted the state's response and summarily denied the claim, explaining it "carefully reviewed the response and f[ound] that it address[ed] [the] claim with both factual and legal accuracy" and "therefore [found] it appropriate and judicially efficient to adopt the State's response as the [trial] [c]ourt's findings." Id. at 82. Petitioner, with help from postconviction counsel, appealed (Resp. Ex. K), and the First DCA per curiam affirmed the trial court's denial without a written

opinion (Resp. Ex. M).

The Court addresses the claim in accordance with the deferential standard for federal court review of state court adjudications. As the state noted in its response to Petitioner's Rule 3.850 motion, trial counsel advised the trial court before trial that he made a tactical decision not to depose any witnesses. Resp. Ex. C at 5-6. Petitioner advised the trial court that he discussed this strategy with counsel and agreed with trial counsel's decision. <u>Id.</u> at 6. As such, "the challenged action might be considered sound trial strategy"; and Petitioner has failed to demonstrate deficient performance. <u>Strickland</u>, 466 U.S. at 689. He has also failed to show that but for trial counsel's alleged error, the outcome of his trial would have been different. Petitioner neither alleges how deposing the state witnesses would have assisted in his defense, nor does he suggest how their potential deposition testimony would have varied from their trial testimony. Accordingly, upon thorough review of the record and the applicable law, the Court concludes that the state court's adjudication of this claim was neither contrary to nor an unreasonable application of <u>Strickland</u>, and it was not based on an unreasonable determination of the facts in light of the evidence presented to the state court. <u>See</u> 28 U.S.C. § 2254(d). Ground Three is due to be denied.

### D. Ground Four

Petitioner contends his trial counsel was ineffective for failing to ask

about a Brady[7] violation during trial. Doc. 1 at 20. Petitioner raised this claim

in his Rule 3.850 motion. Resp. Ex. J at 15-18. The state responded:

> In Ground Four of his Motion, the Defendant alleges
> ineffective assistance of counsel for his trial counsel's
> failure to inquire about an alleged violation of Brady v.
> Maryland, 373 U.S. 83 (1963). The Defendant alleges
> that after the victim testified that she met with two
> Assistant State Attorneys, defense counsel should have
> inquired as to whether the victim told the Assistant
> State Attorneys that she could not identify the
> Defendant as her assailant, as this is an issue the State
> should have disclosed pursuant to Brady.
>
> "Postconviction relief cannot be based on speculative
> assertions." Jones v. State, 845 So. 2d 55, 64 (Fla.
> 2003). The Defendant cannot show Strickland prejudice
> where his allegations are mere speculation. Ferguson,
> [101 So. 3d] at 898. Ground Four of the Defendant's
> Motion is based entirely on speculation about what did
> or did not occur during a conversation between the
> victim and the Assistant State Attorneys who handled
> this case at trial. Because postconviction relief cannot
> be based on speculative assertions, Ground Four should
> be denied.
>
> Additionally, the Defendant is not able to show how
> this alleged Brady violation prejudiced him. No
> evidence was presented at trial that the victim was ever
> able to identify the Defendant. The victim was not
> asked by either the State or the Defense to identify the
> Defendant. The Defendant's trial counsel then pointed
> out during his closing argument that the victim was
> unable to identify her assailant. Accordingly, the
> Defense cannot show that they were prejudiced because
> defense counsel still argued in closing that the victim
> could not identify the Defendant due to the lack of an
> in-court identification. The Defendant has failed to

---

[7] Brady v. Maryland, 373 U.S. 83 (1963).

> show a prima facie case for relief as to Ground Four
> because the allegations are entirely speculative and the
> Defendant cannot show that he was prejudiced. This
> Court may summarily deny Ground Four of the
> Defendant's Motion based upon the record and the
> arguments contained within this Response without
> holding an evidentiary hearing.

Resp. Ex. J at 43-44 (record citations omitted). The trial court adopted the state's response and summarily denied the claim, explaining it "carefully reviewed the response and f[ound] that it address[ed] [the] claim with both factual and legal accuracy" and "therefore [found] it appropriate and judicially efficient to adopt the State's response as the [trial] [c]ourt's findings." Id. at 82. Petitioner, with help from postconviction counsel, appealed (Resp. Ex. K), and the First DCA per curiam affirmed the trial court's denial without a written opinion (Resp. Ex. M).

The Court addresses the claim in accordance with the deferential standard for federal court review of state court adjudications. Here, Petitioner has failed to establish a Brady violation. During cross-examination of the victim, trial counsel elicited extensive testimony about her inability to recall facts surrounding the incident. Indeed, the victim never identified Petitioner as her assailant and trial counsel knew about her inability to make that identification. Petitioner does not allege that the state suppressed evidence of the victim's inability to identify him, and he cannot demonstrate that her lack of identification would have materially affected the outcome of Petitioner's trial

considering Officer Gary presented testimony implicating Petitioner.

To that end, finding no <u>Brady</u> violation, it follows that there can be no meritorious claim of ineffective assistance of counsel for failure to investigate and raise a <u>Brady</u> claim. Thus, upon thorough review of the record and the applicable law, the Court concludes that the state court's decision to deny Petitioner's claim was neither contrary to nor an unreasonable application of <u>Strickland</u>, and it was not based on an unreasonable determination of the facts in light of the evidence presented to the state court. <u>See</u> 28 U.S.C. § 2254(d). Ground Four is denied.

### E. Ground Five

Petitioner argues that the cumulative effect of trial counsel's errors denied Petitioner a fair trial. Doc. 1 at 23. Petitioner raised this claim in his Rule 3.850 motion. Doc. 1 at 18. The state responded:

> In Ground Five of his Motion, the Defendant claims that the cumulative effect of the claims made in grounds one through four resulted in a fundamentally unfair trial procedure. However, "where allegations of individual error are found to be without merit, a cumulative error argument based thereon must also fail." <u>Bryan v. State</u>, 748 So. 2d 1003, 1008 (Fla. 1999). Specifically, if no error occurred by the attorney, it can be concluded that a claim of cumulative error has no merit. <u>Downs v. State</u>, 740 So. 2d 506, 509 (Fla. 1994). There is a strong presumption that the Defendant must overcome to establish that trial counsel's performance was deficient. <u>Johnston v. State</u>, 63 So. 3d 730 (Fla. 2011) (citing <u>Strickland</u>, [466 U.S.] at 690). The critical test is whether the adversarial process worked

adequately, not whether counsel could have done more. White v. Singletary, 972 F.2d 1218, 1221 (11th Cir. 1992) and Waters v. Thomas, 46 F.3d 1506, 1518 (11th Cir. 1995). "[T]he Constitution requires a good deal less than maximum performance." Atkins v. Singletary, 965 F.2d 952, 960 (11th Cir. 1992). Likewise, a defendant is only entitled to a fundamentally fair trial, not a perfect trial, as there is no such thing as a perfect trial. Tavares v. Sec., Dept. of Corrections, 2008 WL 1931351 (M.D. Fla. 2008) and Bell v. State, 930 So. 2d 779, 783 (Fla. 4th DCA 2006).

In the instant case, Grounds One through Four all fail to establish an error by trial counsel. Thus, the Court can summarily deny Ground Five as the Defendant has failed to demonstrate a legal deficiency, or prejudice to himself. The Defendant cannot establish prejudice because the totality of the evidence clearly shows his guilt and none of trial counsel's alleged errors would have put the case in such a different light as to undermine confidence in the verdict. Way v. State, 760 So. 2d 903, 914 (Fla. 2000).

Resp. Ex. J at 44 (record citations omitted). The trial court adopted the state's response and summarily denied the claim, explaining it "carefully reviewed the response and f[ound] that it address[ed] [the] claim with both factual and legal accuracy" and "therefore [found] it appropriate and judicially efficient to adopt the State's response as the [trial] [c]ourt's findings." Id. at 82. Petitioner, with help from postconviction counsel, appealed (Resp. Ex. K), and the First DCA per curiam affirmed the trial court's denial without a written opinion (Resp. Ex. M).

The Court addresses the claim in accordance with the deferential standard for federal court review of state court adjudications. "The cumulative

error doctrine provides that an aggregation of non-reversible errors (i.e., plain errors failing to necessitate reversal and harmless errors) can yield a denial of the constitutional right to a fair trial, which calls for reversal." United States v. Baker, 432 F.3d 1189, 1223 (11th Cir. 2005) (internal quotation marks omitted). The Eleventh Circuit addresses "claims of cumulative error by first considering the validity of each claim individually, and then examining any errors that [it] find[s] in the aggregate and in light of the trial as a whole to determine whether the appellant was afforded a fundamentally fair trial." Morris v. Sec'y, Dep't of Corr., 677 F.3d 1117, 1132 (11th Cir. 2012). Because the Court has determined that none of Petitioner's individual claims of error or prejudice have merit, Petitioner's cumulative error claim cannot stand. Cf. United States v. Taylor, 417 F.3d 1176, 1182 (11th Cir. 2005) ("[There being] no error in any of the district court's rulings, the argument that cumulative trial error requires that this Court reverse [the defendant's] convictions is without merit."). Accordingly, the Court finds that the state court's adjudication of this claim was not contrary to clearly established federal law, did not involve an unreasonable application of clearly established federal law, and was not based on an unreasonable determination of the facts in light of the evidence presented in the state court proceedings. Ground Five is denied.

## F. Ground Six

Petitioner argues that the trial court erred in denying Petitioner's motion

for judgment of acquittal. Doc. 1 at 23. According to Petitioner, the state only presented circumstantial evidence at trial, and it could not rely on the victim's testimony because she was incompetent. Id. at 25. As such, Petitioner contends the trial court should have granted his motion for judgment of acquittal and its failure to do so violated his due process rights. Id.

Petitioner, with help from appellate counsel, raised this issue during his direct appeal. Resp. Ex. F at 20. Respondents, however, submit that Petitioner failed to present this claim as a federal constitutional claim to the state appellate court, rendering it unexhausted and procedurally defaulted. See Resp. at 60-66. The Court agrees.

A review of Petitioner's initial brief filed on direct appeal reveals that when briefing this issue, he did not state or suggest that it was a federal claim about due process or any other federal constitutional guarantee. Resp. Ex. F at 20-34. Instead, Petitioner argued, in terms of state law only, that the trial court's failure to grant a judgment of acquittal was based on an impermissible stacking of inferences and circumstantial evidence. See id. at 32-33 (citing Davis v. State, 90 So. 2d 629 (Fla. 1956); Lynch v. State, 293 So. 2d 44 (Fla. 1974); State v. Law, 559 So. 2d 187 (Fla. 1989); Orme v. State, 677 So. 2d 258 (Fla. 1996)). Consequently, the First DCA was never notified of any federal constitutional claim during Petitioner's direct appeal, and presumably, the First DCA exclusively applied state law in affirming Petitioner's conviction. See

29

Preston v. Sec'y Dep't of Corr., 785 F.3d 449, 461 (11th Cir. 2015) ("We can safely assume that when the Florida [appellate court] considered [petitioner's] appeal, it did so through the prism of this longstanding state doctrine, rather than federal law."). As such, this claim is unexhausted and procedurally defaulted. Petitioner fails to argue cause excusing the default or actual prejudice resulting from the procedural bar. He also identifies no fact warranting the application of the fundamental miscarriage of justice exception. See generally Doc. 8. Thus, Ground Six is due to be denied.

### G. Ground Seven

Petitioner argues that the trial court erred in limiting trial counsel's cross-examination of the victim. Doc. 1 at 29. According to Petitioner, the trial court impermissibly narrowed the scope of counsel's questioning and prohibited him from asking the victim if she participated in a human trafficking ring. Id. He contends that counsel's questions would show if the victim's testimony was motivated by a fear of federal indictment or if she had experience manipulating her responses to law enforcement to avoid prosecution for prostitution. Id. at 30. According to Petitioner, the trial court's limitation on questioning the victim violated his confrontation rights under the Sixth Amendment. Id.

Petitioner, with help from appellate counsel, raised this issue on direct appeal. Resp. Ex. F at 41. The state filed an answer brief arguing:

In its Third Motion in Limine, the State sought a ruling

30

that evidence of the victim's prior sexual activity was not admissible. Mr. Barrar, counsel for the defendant, asserted that Z.S.[] was involved in "a federal investigation for human trafficking." The investigation, to the State's knowledge, "involved a boyfriend that was pimping [the victim] out to several other individuals." The Motion was granted by Judge Aho, stating:

> . . . I am very cognizant of the right of confrontation. I take it very seriously. But I am also aware of the situation in terms of the age of this victim, and I do find that any relevance would be outweighed by the prejudicial effect of such evidence.

Judge Aho, however, was amenable to Mr. Barrar's request to question Z.S. regarding whether she was currently a Government witness, without reference to her sexual background. [FN 5]

It is well-settled that "cross-examination must relate to credibility of the witness or be germane to the matters brought out on direct examination." Salas v. State, 972 So. 2d 941, 956 (Fla. 5th DCA 2007) (citing Steinhorst v. State, 412 So. 2d 332, 337 (Fla. 1982)). "[T]he Confrontation Clause guarantees only 'an opportunity for effective cross-examination, not cross-examination that is effective in whatever way, and to whatever extent, the defense might wish.'" Kentucky v. Stincer, 482 U.S. 730, 739 (1987) (quoting Delaware v. Fensterer, 474 U. S. 15, 20 (1985)) (emphasis omitted).

Trial courts have "wide latitude to impose reasonable limits on the scope of cross-examination." Jones v. State, 580 So. 2d 143, 145 (Fla. 1991) (citation omitted); see Geralds v. State, 674 So. 2d 96, 100 (Fla. 1996). The limits placed on defense counsel's inquiry may reflect concerns about:

> among other things, harassment, prejudice, confusion of the issues, the

witness' safety, or interrogation that is
repetitive or only marginally relevant.

Delaware v. Van Arsdall, 475 U.S. 673, 679 (1986).
Here, the scope of Mr. Barrar's cross-examination was
reasonably limited to whether Z.S. was a Government.
witness, omitting references to the victim's "sexual
background."

The limitation was reasonable because it allowed the
appellant to explore the possible motive or bias he
claimed existed -- that the victim wanted "to curry favor
with the . . . state or the feds" -- without revealing that
the victim was "involved as a prostitute in a human
trafficking case." [FN 6] The alleged probative value of
that disclosure was far outweighed by the danger the
proffered evidence presented of confusion of the issues
and unfair prejudice. [FN 7] Judge Aho's ruling allowed
the appellant to inquire about the victim's testimony;
allowing counsel to cross-examine Z.S. regarding her
sexual background would have served no purpose other
than to improperly impugn her character. § 90. 404
(2)(a), Fla. Stat.

[FN 5] The appellant did not pursue this inquiry
during the victim's cross-examination.

[FN 6] Three questions were proffered after the
jurors retired to deliberate. The appellant offered no
support for his second proffered question and expected
response: that Z.S. expected to be charged in the federal
matter. That assertion was not made during the pre-
trial hearing, before Judge Aho ruled on the Motion in
Limine. Insofar as Z.S. was involved in human
trafficking, she appeared to be a *victim*.

[FN 7] The appellant believed that the probative
value of the proffered evidence was to establish that
Z.S. "learned about the allegations she could make"
against the appellant through her involvement in
human trafficking.

32

Resp. Ex. G at 22-24 (record citations omitted). The First DCA per curiam affirmed Petitioner's judgment and conviction without a written opinion. Resp. Ex. I. The Court addresses the claim in accordance with the deferential standard for federal court review of state court adjudications.

Before trial, the trial court conducted a hearing on the state's third motion in limine, in which it sought to exclude any testimony about the victim's prior sexual activity with anyone other than Petitioner. Resp. Ex. D at 334. Trial counsel argued that his questioning of the victim should not be limited because the victim "is a prostitute, an underage prostitute, . . . involved in a human trafficking case, solely separate and apart from this" case and that information shows "[h]ow she learned about the allegations she could make in this case . . . ." Id. at 336. According to trial counsel, that testimony was necessary "to show bias, motive, or ability to perceive and remember." Id. But while the trial court denied Petitioner's request to ask those questions, Petitioner was allowed some leeway in questioning the victim about the circumstances that led her to accuse Petitioner of sexually assaulting her. Trial counsel was permitted to question the victim about whether law enforcement coached her on what her testimony should be, to which she responded no one had influenced her testimony. Resp. Ex. D at 390.

Also, and likely of more import, "the Sixth Amendment only protects

cross-examination that is relevant." <u>Jones v. Goodwin</u>, 982 F.2d 464, 469 (11th Cir. 1993). And questions about the minor victim's prior sexual activity or involvement in an unrelated trafficking organization bore no relevance to whether Petitioner committed the alleged offense. Indeed, considering the victim was a minor at the time of the incident, such evidence was particularly immaterial. Thus, upon thorough review of the record and the applicable law, the Court concludes that the state court's decision to deny Petitioner's claim was neither contrary to nor an unreasonable application of federal law, and it was not based on an unreasonable determination of the facts in light of the evidence presented to the state court. Ground Seven is denied.

Accordingly, it is

**ORDERED AND ADJUDGED:**

1.      The Petition (Doc. 1) is **DENIED**, and this case is **DISMISSED with prejudice**.

2.      The **Clerk** shall enter judgment dismissing this case with prejudice, terminate any pending motions, and close the file.

3.      If Petitioner appeals the dismissal of this case, the Court denies a

certificate of appealability.[8] Because the Court has determined that a certificate of appealability is not warranted, the Clerk shall terminate from the pending motions report any motion to proceed on appeal as a pauper that may be filed in this case. Such termination shall serve as a denial of the motion.

**DONE AND ORDERED** at Jacksonville, Florida, this 2nd day of August, 2023.



TIMOTHY J. CORRIGAN
United States District Judge

Jax-7

C:     Gregory Kazon Fields, #J56817
       Counsel of record

---

[8] The Court should issue a certificate of appealability only if a petitioner makes "a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). To make this substantial showing, Petitioner "must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong," Tennard v. Dretke, 542 U.S. 274, 282 (2004) (quoting Slack v. McDaniel, 529 U.S. 473, 484 (2000)), or that "the issues presented were 'adequate to deserve encouragement to proceed further,'" Miller-El v. Cockrell, 537 U.S. 322, 335-36 (2003) (quoting Barefoot v. Estelle, 463 U.S. 880, 893 n.4 (1983)). Upon due consideration, the Court will deny a certificate of appealability.